**MICROSOFT CORP., Plaintiff,**

v.

**VERY COMPETITIVE COMPUTER PRODUCTS CORP. dba VCCP, Evergood, Favorlon Enterprise Co., Ltd., Wetex International (USA) Corp., Quadrant Components, and Oceanland Service, Inc., Defendants.**

No. C 87 0594 DLJ.

United States District Court,
N.D. California.

March 13, 1987.

On Motion To Vacate Or Modify Injunction
Aug. 13, 1987.

Paul Vapnek and Kate Spelman of Law Firm Townsend & Townsend, San Francisco, Cal., for plaintiff.

Robert Fong of Law Firm Ku & Fong, Los Angeles, Cal., for defendant Wetex.

Kelly Corr and Rob Bakemeir of Law Firm Bogle & Gates, Seattle, Wash., for defendants VCCP and Evergood.

JENSEN, District Judge.

A hearing on plaintiff's Motion for a Preliminary Injunction was held on March 12, 1987 at 4 o'clock p.m. (continuing on March 13, 1987 at 11 o'clock a.m.). Counsel appeared on behalf of plaintiff Microsoft Corp. and defendants Very Competitive Computer Products dba VCCP (erroneously sued as Very Cheap Computer Parts, Inc.), Wetex International (USA) Corp., and Quadrant Components.

A party alleging copyright infringement is entitled to injunctive relief. 17

U.S.C. § 502. Injunctive relief may be granted regarding infringing activity that occurred prior to copyright registration. H.R.Rep. No. 1476, 94th Cong., 2d Sess. [1976] *reprinted in* U.S.Cong. & Admin. News 1976, pp. 5659, 5774.

In this circuit a party seeking a preliminary injunction must demonstrate either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in the moving party's favor. *Oakland Tribune, Inc. v. The Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*

Plaintiff has shown that defendants have manufactured, imported and distributed software called Falcon DOS which is substantially similar to MS–DOS Version 3.1, plaintiff's copyrighted software. The parties do not dispute that unless there is a showing that defendants sold Falcon DOS pursuant to a valid license conferred by means of a series of contracts, plaintiff has established a prima facie case of copyright infringement.

The Court finds that the documents before it do not demonstrate that authority to distribute Falcon DOS was conferred upon defendants. The Preliminary Agreement of March 7, 1986 between Microware (USA) Limited and Evergood Computer International Corp., which was approved by Tim Patterson of Falcon Technology, Inc., by its text indicates that contractual arrangements could not be made as to a license to sell Falcon DOS because the nature of Falcon's license from Microsoft was uncertain. While defendants' showing indicates that evidence extrinsic to the contract raise an issue as to whether a license has been conferred, it does not overcome the contrary showing of probability of success on the merits by the plaintiff.

Plaintiff has demonstrated a possibility of irreparable harm. First, irreparable harm is presumed from a prima facie showing of infringement. *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir.1977). Plaintiff moved quickly in bringing this action after discovering the source for distribution of Falcon DOS, indicating that it believed that it is being harmed by the presence of this product in the marketplace.

Second, monetary damages may not be an adequate remedy in the event plaintiff succeeds on the merits because there is the possibility of consumer dissatisfaction with Falcon DOS and a possibility that a judgment of damages would be difficult to enforce and may be unenforceable against some of the defendants.

Accordingly, the Court GRANTS plaintiff's Motion for a Preliminary Injunction as to defendants VCCP, Evergood, Favorlon Enterprise Co., Ltd, Wetex International (USA) Corp. and Oceanland Service, Inc. Plaintiff's Motion is DENIED as to defendant Quadrant Components.

IT IS HEREBY ORDERED that,

Defendants subject to the Preliminary Injunction, their officers, directors, agents, servants, employees and representatives, are enjoined and restrained during the pendency of this action from directly or indirectly infringing plaintiff Microsoft Corp.'s copyrights in its software products in any manner, and from importing, exporting, publishing, manufacturing, advertising, duplicating, offering for sale, selling or otherwise disposing of:

(a) any software product substantially similar to plaintiff's copyrighted software product MS–DOS, or,

(b) any promotional material substantially similar to plaintiff's copyrighted software product MS–DOS.

IT IS FURTHER ORDERED that a bond in the amount of $10,000. be filed on behalf of plaintiff on or before five o'clock p.m. Monday, March 16, 1987.

IT IS FURTHER ORDERED that for good cause shown, the Temporary Restraining Order in effect shall remain in effect through Monday, March 16, 1987.

On Motion to Vacate or
Modify Injunction

This is an action for copyright infringement brought by Microsoft Corporation ("Microsoft") against manufacturers, importers, and distributors of "Falcon DOS" software diskettes that allegedly infringe Microsoft's copyrighted MS–DOS 3.1 software. Defendants Very Competitive Computer Products, Inc. ("VCCP") and Evergood Computer International Corp. ("Evergood") move the Court to dismiss the complaint for lack of *in personam* jurisdiction. VCCP additionally moves to vacate or modify the Preliminary Injunction entered on March 13, 1987 which bars defendants from manufacturing, selling or distributing Falcon DOS. Defendant Wetex International (USA) Corp. ("Wetex"), moves to join, or to dismiss for failure to join, an allegedly indispensable party, Falcon Technology, Inc. ("Falcon").

### I.

*Motion to Dismiss for Lack of Personal Jurisdiction*

██ Evergood and VCCP are both corporations organized under the laws of Taiwan, with their principal place of business in Taipei. According to affidavits submitted by the President of Evergood and the Vice Chairman of VCCP, neither company is licensed to do business in the United States, neither has an office, agent or distributor in the United States, and neither has any bank accounts or property in the United States. Both affidavits state that neither company "has ... ever solicited or transacted business orders in the United States" and that the corporations "did not sell any Falcon DOS to Wetex International (USA) Corp. or any other U.S. Corporation." The affidavits further state that the companies "did not design, control, or have any relationship to any system of distribution that brought the Falcon DOS to the United States."

The Vice President of Wetex, the importer and United States distributor of the 55,-000 sets of Falcon DOS seized in this action declares that these shipments of Falcon DOS came from Favorlon Enterprise Co., Ltd. ("Favorlon"), a third Taiwanese corporation that is also a defendant to this action (but not a party to this motion). At his deposition this declarant stated that he received the import documentation from Favorlon and that Favorlon was the defendants' export agent in Taiwan.

Evergood and VCCP argue that they sold the Falcon DOS to Favorlon, and all contact with California purchasers was made by Favorlon, not VCCP or Evergood. They imply that all responsibility for allegedly infringing activities in California should be born by Favorlon.[1] Consequently, they argue, VCCP and Evergood do not have sufficient contacts with California to enable this court to exercise jurisdiction over them.

Plaintiff argues that Favorlon's role in the California distribution on Falcon DOS is merely that of an export agent through which the goods passed. Microsoft contends that the distribution and sale of Falcon DOS in California was conceived by, planned, and controlled by VCCP and Evergood. According to Microsoft, this control of the distribution is sufficient to establish minimum contacts with California for purposes of personal jurisdiction.

██ The Due Process clause of the United States Constitution permits the exercise of jurisdiction over a defendant who has with the forum state, "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Whether a court may exercise jurisdiction depends upon "the relationship among the defendant, the forum, and the litigation." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868,

---

**1.** Favorlon is a named defendant in this action but is not a party to this motion and has not appeared in this action.

1872, 80 L.Ed.2d 404 (1984) *quoting Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). When the suit arises out of the defendant's activities in the forum state, this relationship is adequate to merit the exercise of jurisdiction when the defendant performs an act or conducts a transaction whereby he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; the claim arises out of those forum-related activities; and the exercise of jurisdiction is reasonable. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–74, 105 S.Ct. 2174, 2182–83, 85 L.Ed.2d 528 (1985); *Hasten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1396–97 (9th Cir.1986). Jurisdiction due to contacts arising from the subject matter of the litigation is often referred to as "specific jurisdiction."

An individual purposefully avails himself of the benefits and protections of a state's laws when his conduct is such that he should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 474, 105 S.Ct. at 2183. Purposeful availment occurs when a defendant deliberately engages in significant activities within the forum state, or creates continuing obligations between himself and residents of that state. *Id.,* 105 S.Ct. at 2184 *citing Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) and *Travelers Health Assn v. Virginia,* 339 U.S. 643, 648, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950). Isolated contacts, an attenuated affiliation, or the unilateral activity of another party in the forum state is insufficient. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 475, 105 S.Ct. at 2183.

A commercial actor need not physically enter the forum state to purposefully avail himself of the privilege of conducting business there. "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communication across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 476, 105 S.Ct. at 2184. *In personam* jurisdiction exists, despite the absence of a commercial actor's presence in the forum state, if he has created continuing relationships and obligations with the citizens of the state, or has directed activity deliberately toward that state, aware that its effects will be felt there. *Id.* at 475–476, 105 S.Ct. at 2183–84. *See also Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 222–223, 78 S.Ct. 199, 200–01, 2 L.Ed.2d 223 (1957).

To demonstrate that Favorlon was not the responsible actor in the sale and importing of Falcon DOS to California, and that VCCP and Evergood have sufficient contacts with California to permit the exercise of jurisdiction, Microsoft depends primarily upon the deposition testimony of Jonathon Liu, an officer of American Computer Products, doing business as Megasoft,[2] and of Sammy Ponnusamy, Vice President of Wetex.

The deposition testimony of J. Liu demonstrates that Megasoft received three shipments of computer products, including Falcon DOS, from Evergood in early 1987. The invoices and packing lists for these shipments were on Evergood letterhead and signed by Evergood's president, Y.C.

---

**2.** Defendants object to the use of J. Liu's deposition on the grounds that it was taken in a separate action in which neither VCCP nor Evergood is a named defendant. They argue that since neither party had notice of the deposition, Fed.R.Civ.P. 32 bars its use in this motion. To successfully oppose a motion to dismiss for lack of personal jurisdiction plaintiff is obligated to present facts, by affidavit or otherwise, supporting personal jurisdiction. *Scott v. Breeland,* 792 F.2d 925, 927 (9th Cir.1986). Deposition testimony given on personal knowledge that is presented in lieu of affidavits may be considered by the court as substitute affidavits for purposes of motions that require support by affidavits, despite their inadmissibility under Fed.R.Civ.P. 32. *Cf. Hoover v. Switlik Parachute Co.,* 663 F.2d 964, 966–967 (9th Cir.1981). There is no need to require the party presenting the deposition testimony to obtain an affidavit that reiterates the information given in the deposition. *Id.*

Change. J. Liu testified that Evergood employees phoned him to solicit his orders.

Additionally, Megasoft received a letter dated April 29, 1987 signed by Y.C. Chang. The letter informed Megasoft that Evergood licensed Falcon DOS 3.1 from Falcon Technologies, Inc. and that the shipments of Falcon DOS were delayed due to the legal action against VCCP and Evergood initiated by Microsoft in Taiwan. This letter was written on letterhead that bore the logos and addresses of both VCCP and Evergood.

Sammy Ponnusamy, the president of Wetex, testified that Wetex first contacted VCCP in October 1982 to obtain interface cards and printer cables. He placed his first order for these supplies in late December or early January 1987. Also at that time he travelled to Taiwan and met with VCCP officials several times. They agreed to use Wetex as their import agent in the United States. Wetex was to receive one dollar per set of Falcon DOS imported through Wetex. Wetex was not involved in soliciting orders in the United States. It was not informed of incoming shipments until Favorlon sent it the import documentation. Wetex was simply to pick up the shipments, store them, and ensure their delivery to the retailers who had placed orders. Plaintiff has presented documentation showing shipments of Falcon DOS to Wetex. Over 55,000 sets of Falcon DOS directed to Wetex have been seized in this action.

The agreement between Wetex and VCCP was arranged directly with VCCP officials. The only role Favorlon had in this arrangement was to send Wetex the import documentation for shipments exported from Taiwan. S. Ponnusamy testified that to allay Wetex's fears of possible infringing activity, VCCP faxed to Wetex copies of the contracts it relies upon to argue that it had a sublicense for MS–DOS from Falcon Technology, Inc.

This evidence demonstrates to the Court's satisfaction that Favorlon was not the responsible party, but was merely a conduit for exportation purposes. Thus the Court rejects defendants' contention that Favorlon bought the Falcon DOS from VCCP and Evergood and unilaterally distributed them in California. The remaining issue for purposes of determining whether personal jurisdiction exists, is whether the contacts of VCCP and Evergood described by the officers of Megasoft and Wetex are sufficient minimum contacts to permit the exercise of jurisdiction.

All of the activities of VCCP and Evergood regarding Falcon DOS shipments are activities from which this suit arises, including those involving Megasoft. The fact that Megasoft is named in a separate action and the diskettes sent to Megasoft were seized in another action does not bar the court from considering the contacts with Megasoft for purposes of determining "specific jurisdiction." The transaction at issue in this action is general infringement by VCCP and Evergood of the copyrighted MS–DOS 3.1 software. Therefore, all contacts involving distributing allegedly infringing Falcon DOS 3.1 in the California are forum-related activities and may be considered for purposes of specific jurisdiction.

Both Evergood and VCCP created relationships with California entities in connection with their distribution of Falcon DOS in California. VCCP had a relationship with Wetex whereby Wetex acted as VCCP's importer. VCCP itself established this relationship and VCCP bore the obligation of paying Wetex for its services. VCCP cannot insulate itself from this relationship by having Favorlon act as its exporting agent. Evergood solicited and received orders for Falcon DOS from Megasoft, thereby creating obligations in California.

Additionally, both companies deliberately directed the Falcon DOS at issue in this action into California. By directing their product into California, these companies purposefully availed themselves of the benefits and protections of California's laws. Additionally, the defendants could reasonably foresee being haled into court in California for their activities here. If they had breached their obligations to Wetex or Megasoft, they would be subject to suit in

California. They additionally could forsee being haled into court for copyright infringement, or, in the event they believed they had a valid sublicense, for breaching the terms of the sublicense agreement. Accordingly, the Court finds sufficient minimum contacts of defendants VCCP and Evergood with California to exercise its jurisdiction over the defendants.

■ The Court is also satisfied that its exercise of jurisdiction is reasonable in this instance. Whether the exercise of jurisdiction is reasonable depends upon an evaluation of several factors. When these factors clearly establish the reasonableness of the exercise of jurisdiction, jurisdiction may be based upon a lesser showing of minimum contacts. *Burger King v. Rudzewicz, supra,* 471 U.S. at 477, 105 S.Ct. at 2184. The factors to be considered include: the burden on the defendant; the interests of the forum state in adjudicating the dispute; the plaintiff's interest in obtaining relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies. *Id.; Asahi Metal Industry Co. v. Superior Court,* — U.S. —, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

Here there is a strong interest in the policies of the federal copyright statutes that will be furthered by adjudicating the case in this forum, as opposed to Taiwan. Additionally, since the plaintiff is a California resident, the forum state has a strong interest in adjudicating the dispute in this forum. Although the burden of defending an action in the United States may be great for a foreign defendant due to the distance and language difficulties, *id.,* this burden carries less weight when the foreign company has direct and ongoing business activities with United States entities. The burden to defendants in this action does not outweigh the strong interests in adjudicating this controversy in California. Accord-

ingly, the exercise of this Court's jurisdiction is proper in this instance.

■ The defendants also object to venue. Venue is proper in this district. "Civil actions … arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400. A defendant is found for purposes of this statute wherever personal jurisdiction over him is proper. *Battle Creek Equipment Co. v. Roberts Mfg. Co.,* 460 F.Supp. 18 (E.D.Mich.1978). Since the Court has held that personal jurisdiction exists over VCCP and Evergood, venue is proper in this district.

II.

*Motion to Vacate or Modify the Preliminary Injunction*

*A. Motion to Vacate*

■ Plaintiff has demonstrated a prima facie case of infringement. In issuing the preliminary injunction the Court found that this showing demonstrated a strong likelihood of success on the merits. To counter plaintiff's prima facie case of infringement, defendants rely upon a series on contracts to argue that Falcon, who possessed a license to manufacture and distribute MS-DOS 3.1, sublicensed its rights to Evergood and VCCP's predecessor in interest, Microware Universal Ltd. ("MUL").[3]

Reliance upon a contract that the infringer believed conveyed a license is not a defense to infringement because an innocent infringer is liable for infringement regardless of a lack of intent to infringe. *Fitzgerald Pub. Co. Inc. v. Baylor Pub. Co. Inc.,* 807 F.2d 1110, 1113 (2d Cir.1986); *see also Costello Pub. Co. v. Rotelle,* 670 F.2d 1035, 1044 (D.C.Cir.1981). Therefore, plaintiff's showing of likelihood on the merits is only weakened if defendants demonstrate that the contracts actually gave MUL(VCCP) and Evergood a sublicense to manufacture and sell MS-DOS in the USA. It is insufficient for defendants merely to

---

**3.** By agreement signed January 19, 1987 MUL assigned its interest in its agreement with Falcon to VCCP.

demonstrate that they believed that the contracts at issue conferred upon them a sublicense.

To demonstrate that they possess a valid sublicense defendants must establish that: (1) Falcon Technology, Inc. possessed the ability under its license agreement with Microsoft to sublicense the rights to copy for sale MS–DOS; (2) Falcon in fact agreed to sublicense its right to use MS–DOS to defendants; and (3) the copying for sale conducted by defendants satisfies the conditions to the license.[4]

Microsoft argues that the License Agreement did not convey to Falcon Technology, Inc. a right to sublicense. The License Agreement states that Falcon "shall not sublicense its right under this agreement to any other person or entity *except as specifically authorized by this agreement.*" License Agreement ¶ 7 (emphasis added). The license granted by this agreement includes the right to "use, modify, reproduce and *sublicense*" the listed Microsoft products, subject to the limitations of ¶¶ 5 and 6. License Agreement ¶ 1 (emphasis added). Since neither ¶ 5 nor ¶ 6 mentions limitation on sublicensing, the License Agreement appears to confer upon Falcon the right to sublicense.

Defendants rely upon a series of contracts to argue that VCCP/MUL holds a valid sublicense to market MS–DOS 3.1 in the United States. First, they present the "Preliminary Agreement" of March 7, 1986 between Evergood and MUL appointing Evergood as a non-exclusive distributor of Falcon products in Taiwan. The products listed in this agreement include PC/XT ROM BIOS, PC/AT ROM BIOS, and/or MS–DOS series 2.xx and 3.xx releases. Paragraph 6.3 of this agreement, which addresses the MS–DOS license, reads as follows:

The exact nature of the MSDOS license agreement in unknown as of this writing. Therefore, contractual arrangements cannot be made. The intent and spirit of the MSDOS agreement between MUL and EVERGOOD is to allow EVERGOOD to sell MSDOS release 2.xx and 3.xx in Taiwan on a per each basis for a sum yet to be negotiated providing such an agreement is within Falcon's license agreement for MSDOS with Microsoft Corporation.

The second agreement is that of April 18, 1987 between MUL and Falcon appointing MUL Falcon's exclusive marketing representative in Taiwan, Hong Kong, Singapore, Malaysia, and Indonesia. This agreement provides for Falcon to approve or reject all orders solicited by MUL. The next day a Final Agreement for orders by Evergood was executed between Evergood and MUL. Presumably Falcon's approval of the Preliminary Agreement applied to all identical provisions of this Final Agreement. Paragraph 6.3 of the Final Agreement simply states that the MS–DOS license will carry a price of $24.00 per license. The Final Agreement included an estimated purchase volume by Evergood for the year of 1986 totaling 54,000 copies of MS–DOS 3.xx and 138,000 of MS–DOS 2.xx.

The Court based its original decision to grant the preliminary injunction on its finding that defendants had not established that the agreements between them and Falcon included an agreement by Falcon to sublicense its rights to copy MS–DOS. The Court stated:

The Preliminary Agreement of March 7, 1986 between Microware (USA) Limited and Evergood Computer International Corp., which was approved by Tim Paterson of Falcon Technology, Inc., by its text indicates that contractual arrangements could not be made as to a license to sell Falcon DOS because the nature of Falcon's license from Microsoft was uncertain. While defendant's showing indicates that evidence extrinsic to the con-

---

**4.** A copyright owner's remedies against copiers who possess a valid sublicense but have failed to satisfy a condition upon which the rights of the license depend are not limited to breach of contract. Such use is without the authority of the licensor and may constitute infringement of the copyright. 3 Nimmer of Copyright, § 10.15 at 10–109. Defendant's argument that plaintiff's sole remedy is a breach of contract action if the court finds that a sublicense was conferred but the sublicensee did not comply with conditions of the license is without merit.

tract raises an issue as to whether a license has been conferred, it does not overcome the contrary showing of probability of success on the merits by the plaintiff.

Defendants now present additional evidence, not available to them at the preliminary injunction hearing, to argue that the preliminary agreement between Falcon and MUL, VCCP's predecessor-in-interest, became final upon Tim Paterson's approval on March 19, 1986, and thus conferred upon MUL a sublicense for MS–DOS. To support this argument VCCP offers the declaration of Jack Perry, a principal of MUL, who states that the "only issue" left open after Paterson's approval was the "dollar amount of the royalty due to MUL from Falcon (sic) for the sales of Falcon MS–DOS and Falcon hardware that MUL arranged."

Assuming, without deciding, that this evidence suffices to establish that Falcon granted a sublicense to Evergood by means of its approval of the Preliminary Agreement, this fact does not alone undermine plaintiff's showing of a likelihood of success on the merits. First, ¶ 6.3 of the Preliminary Agreement by its own terms limits the sublicense to allowing Evergood to sell MS–DOS "in Taiwan." As discussed in section I *supra* it is apparent that Evergood was selling MS–DOS in the United States. The sublicense, if one was granted, did not include such activity. Second, only 54,000 copies of MS–DOS 3.xx were authorized under the Preliminary Agreement. Copies of Falcon DOS 3.1 that have been seized in this action exceed this number. Therefore, at this stage of the proceedings defendants have yet again failed to demonstrate that a sublicense was granted to engage in the activity which Microsoft alleges as infringing activity.[5]

In summary, although defendants have established a strong possibility of proving

that Microsoft conveyed to Falcon the right to sublicense, they have failed to demonstrate that Falcon conveyed to Evergood a sublicense to sell unlimited quantities of MS–DOS in the United States. Additionally, in the Court's opinion the balance of hardships weighs in favor of plaintiff. Accordingly, defendant's motion to vacate the preliminary injunction is DENIED.

*B. Motion to Modify the Preliminary Injunction*

When the Court issued the Temporary Restraining Order it imposed on plaintiff a $10,000. bond. It renewed this bond upon issuing the Preliminary Injunction. Plaintiff has also posted a $350,000. bond for the first group of diskettes seized from Wetex and a $520,000. bond for the second group seized. The Court issued these bonds on the basis of affidavits that the replacement cost is approximately $6.00 per diskette. At the time the bonds were issued Microsoft represented that it was a $2 billion company.

Defendants seek a bond in the amount of either $9,600,000., representing the amount Wetex projects as its loss resulting from the preliminary injunction, or in an amount less than the projected loss but in excess of $10,000. They argue that a substantially greater amount of protection is needed since their damages, if it is held that the injunction was improperly granted, will be limited to the amount of the preliminary injunction bond. They also argue that no hardship to Microsoft will result because, according to a report in Business Week (April 1987), Microsoft's 1987 revenues are projected to be in excess of $300 million.

The only evidence presented to support the request for a bond of over $9 million is the declaration of Sammy Ponnusmay, the Vice President of Wetex, in which he states that there is a substantial market for Falcon DOS and that Wetex projects a loss of over $9 million over the next four years.

---

5. Microsoft also has argued that the license granted to Falcon was a limited one that tied sales of MS–DOS to sales of specific Falcon hardware products. Defendants' sales are not tied to hardware purchases. Defendants contend that such a limitation is legally invalid and therefore void. The limitation language in the

License Agreement is sufficiently ambiguous to raise serious doubts as to whether such a tying requirement exists. However, in light of the Court's ruling that the activity engaged in by defendants was not within any possible sublicense conferred by Falcon, this issue need not be determined at this time.

Mr. Ponnusmay gave no support for this projection. On the contrary, he states elsewhere in the same declaration that it would be impossible to assess the amount of damage done to Wetex by the issuance of the Preliminary Injunction, and at his deposition he stated that Wetex would only earn one dollar, minus costs for shipping and storage, for each copy of Falcon DOS it handled as an import agent for Evergood. In light of this evidence the proffered amount of damages appears highly speculative.

The purpose of a bond for the Preliminary Injunction bond is to provide a remedy for defendants in the event that the injunction was improperly issued. While it is generally held that defendants' damages for the improper issuance of a preliminary injunction is limited to the amount of the bond, *see, e.g., Buddy Systems, Inc. v. Exer-Genie, Inc.,* 545 F.2d 1164 (9th Cir. 1976) *cert. denied,* 431 U.S. 903, 97 S.Ct. 1694, 52 L.Ed.2d 387 (1977), there is no authority that prevents defendants from seeking the amount of both the preliminary injunction bond and the bonds issued in connection with the seizure of the allegedly infringing goods. This Court required a preliminary injunction bond of only $10,000.00 because the plaintiff had filed bonds in the amount of $870,000.00 for the goods seized. It is the opinion of this Court, and the law of this case, that a party seeking damages for improper issuance of an injunction in a copyright infringement action may seek damages in the amount of the seizure bonds, as well as the preliminary injunction bond. Defendants have not provided sufficient evidence to demonstrate a likelihood that damages suffered due to the preliminary injunction will exceed $880,000.00. Therefore, defendant's Motion to Modify the Preliminary Injunction is DENIED.

### III.

*Whether Falcon is an Indispensable Party*

▇ Approximately 77 percent of the material on the Falcon DOS diskettes seized in this action is copyrighted MS-DOS 3.1 material. Of that 77 percent, all the material is identical to MS-DOS 3.1 except one byte. Wetex assumes that the remaining 23 percent of the seized Falcon DOS diskettes is the "adaption code" added to MS-DOS 3.1 by Falcon. This modification of MS-DOS 3.1 is a basic input/output system ("BIOS" or "I/O") that configures the MS-DOS to computer hardware. The Falcon adaption code is copyrighted. The seized Falcon DOS bears both Microsoft's copyright mark and Falcon's copyright mark.

In its motion papers Wetex has argued that the Falcon modification to MS-DOS 3.1 created a product whose copyright is jointly owned by Microsoft and Falcon, the Falcon DOS, and that Falcon, as co-owner of the copyrighted material was an indispensable party. At the hearing Wetex offered to abandon its attempt to have Falcon declared an indispensable party if Microsoft made clear that it is seeking no relief as to Falcon. Counsel for Microsoft agreed on the record that no claim for damages in this action is based on the Falcon copyrights.

A party is necessary to the adjudication of litigation if non-joinder would prevent complete relief among the litigants, or the absentee claims an interest relating to the subject of the action and his absence would be prejudicial to him or would subject the parties to substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest. Fed.R.Civ.P. 19(a). Falcon's interest in this litigation is limited to an interest in the adaption code. This interest does not prevent complete relief to Microsoft, nor does it subject defendants to a substantial risk of incurring double or inconsistent obligations. The existence of the Falcon copyrighted adaption code on the diskette merely subjects defendants to the risk of another copyright infringement suit on a second copyright infringed by the same diskettes which infringe the copyright asserted in this action.

Accordingly, Wetex's motion for compulsory joinder or dismissal is DENIED. Additionally, since Wetex has not demonstrat-

**1260**

ed that Falcon is a necessary party, nor has it demonstrated that Falcon is subject to the jurisdiction of this Court, its request for permissive joinder is also DENIED.

IT IS HEREBY ORDERED that:

1. the motion of defendants VCCP and Evergood to dismiss for lack of personal jurisdiction is DENIED;

2. the motion to vacate the injunction is DENIED;

3. the motion to modify the injunction is DENIED;

4. the motion to join Falcon Technology, Inc. is DENIED.