MILWAUKEE CONCRETE STUDIOS,
LIMITED, Plaintiff–Appellant,

v.

FJELD MANUFACTURING COMPANY,
INCORPORATED, and Janice Krueger,
Defendants–Appellees.

No. 92–2603.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 20, 1993.

Decided Oct. 19, 1993.

Craig S. Fochler, Douglas N. Masters (argued), John Michael Murphy, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, IL, Robert D. Silver, Park Ridge, IL, for plaintiff-appellant.

Alan M. Anderson (argued), Larkin, Hoffman, Daly & Lindgren, Bloomington, MN, Kathy L. Kuehl, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for defendants-appellees.

Before CUMMINGS and ROVNER, Circuit Judges, and SHADUR, Senior District Judge.*

* The Honorable Milton I. Shadur, Senior District Judge for the Northern District of Illinois, sitting by designation.

ROVNER, Circuit Judge.

■ This copyright infringement action poses an interesting question under the copyright venue statute, 28 U.S.C. § 1400(a). The issue is whether Fjeld Manufacturing Company ("Fjeld") or Janice Krueger[1] "resides" or "may be found" in the Eastern District of Wisconsin. The district court said not and dismissed the action for improper venue. The court also sanctioned the plaintiff, Milwaukee Concrete Studios, Limited ("MCS"), $1,000 under Fed.R.Civ.P. 11 because of its erroneous representation that a key third party, Greeley Ornamental Concrete Products ("Greeley"), was located in Milwaukee, Wisconsin (in the Eastern District), rather than in Ellsworth, Wisconsin (in the Western District). MCS appeals both the venue determination and the imposition of Rule 11 sanctions. We agree that venue was improper and therefore affirm the dismissal of MCS' complaint, but we find no basis for sanctions, and we accordingly reverse that award.

## I. FACTS

MCS manufactures concrete statuary, including birdbaths, fountains, and planters, and distributes these products throughout the United States. MCS' products are used primarily in commercial atriums, malls, and parks, and also in private homes and yards. MCS sometimes designs its own statuary and holds copyright registrations for more than 150 original designs. It filed this action under the Copyright Act of 1976, 17 U.S.C. § 101 et seq., alleging that Fjeld infringed the copyright on its "Oakwood Squirrel Birdbath" by importing an unauthorized copy from Canada (the "Canadian birdbath"). According to MCS, Fjeld delivered the Canadian birdbath to Greeley, another large manufacturer of concrete statuary located in Ellsworth, Wisconsin, so that Greeley could make a mold of the birdbath. Greeley then manufactured 500 infringing baths, which were sold throughout the State of Wisconsin. MCS sued Greeley for infringement in the Eastern District of Wisconsin, and it later filed this action against Fjeld in the same district.

Fjeld moved to dismiss the complaint for improper venue.[2] MCS had alleged that venue in the Eastern District of Wisconsin was proper pursuant to 28 U.S.C. § 1400(a), which provides that:

Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works may be instituted in the district in which the defendant or his agent resides or may be found.

Because Fjeld and Krueger reside in North Dakota,[3] the parties recognized that venue would lie in the Eastern District of Wisconsin only if Fjeld "may be found" there. Fjeld argued that it could not because it has no contacts with that district.

1. After oral argument, we were notified that Krueger had filed a petition in bankruptcy on November 9, 1992, so that the automatic stay imposed by 11 U.S.C. § 362(a)(1) would prohibit the prosecution of this appeal against her. We solicited the parties' views on whether Krueger's bankruptcy would have any effect on Fjeld. Plaintiff and Fjeld agree that it does not and that we may proceed to resolve this appeal as it relates to Fjeld. See Pitts v. Unarco Indus., Inc., 698 F.2d 313 (7th Cir.) ("The clear language of Section 362(a)(1) thus extends the automatic stay provision only to the debtor filing bankruptcy proceedings and not to non-bankrupt co-defendants."), cert. denied, 464 U.S. 1003, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983); see also In re James Wilson Assoc., 965 F.2d 160, 170 (7th Cir.1992); Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1205 (3d Cir.1991), vacated, reh'g granted, (3d Cir.), reinstated, (3d Cir.1992); Schulz v. Celotex Corp., 942 F.2d 204, 205 n. 1 (3d Cir.1991).

The stay of the appeal as to Krueger does not affect the venue determination, for she stands in Fjeld's shoes in this respect. The complaint alleges that Krueger "directed and controlled" the activities of Fjeld and that her actions were taken on Fjeld's behalf. (R. 1.) In these circumstances, Fjeld may be found in any district in which Krueger may be found. For ease of reference, we therefore refer only to Fjeld when discussing the acts giving rise to plaintiff's claim of copyright infringement.

2. Fjeld alternatively argued that it was not subject to personal jurisdiction, but the district court never specifically reached that question.

3. Fjeld is incorporated in the State of North Dakota and maintains its principal place of business in Minot, North Dakota. (R. 1, at ¶ 3.)

MCS responded with a memorandum the district court deemed sanctionable. MCS maintained that because Fjeld was subject to personal jurisdiction in the Eastern District under the Wisconsin long-arm statute, Wis. Stat. § 801.05, it also could be found there for purposes of section 1400(a). In advancing this argument, however, MCS repeatedly represented that Greeley was located in Milwaukee (in the Eastern District), rather than in Ellsworth (in the Western District). (*See* R. 9, at 3, 5, 8, and 10.) MCS apparently did not discover its error until shortly before Fjeld was to reply, when it submitted a one-page "supplement" acknowledging its "inadvertent error." (R. 11.) In its reply, Fjeld noted the error and argued that MCS had tied the defendants only to the Western District of Wisconsin, so that venue did not lie in the Eastern District under section 1400(a).

The district court found venue improper in the Eastern District. *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 782 F.Supp. 1314 (E.D.Wis.1991). Although the court agreed that the "may be found" requirement of section 1400(a) generally is equated with a party being subject to personal jurisdiction, it concluded that " 'amenability to personal jurisdiction' must relate to the *district* in which the action has been commenced." *Id.* at 1316 (district court's emphasis). Thus, the word "state" in Wisconsin's long-arm statute "must be substituted with the word 'district' in order to preserve the plain meaning of 28 U.S.C. § 1400(a)." *Id.* at 1316–17. The district court determined that Fjeld had not committed an "act or omission" in the Eastern District within the meaning of Wis.Stat. § 801.05(3);[4] instead, the relevant conduct had occurred at Greeley's place of business in the Western District. *Id.* at 1317. The dis-

trict court also found that the requirements of section 801.05(4) were not satisfied because, although Fjeld had committed a foreign act that resulted in a local injury, there was no additional contact between Fjeld and the Eastern District, as section 801.05(4) requires.[5] *Id.* at 1318.

Having determined that venue was improper, the district court also sanctioned MCS $1,000 for its error in having relocated Greeley to Milwaukee. The district court reasoned that even if the error was inadvertent, it was nonetheless unreasonable because a "[r]easonable inquiry ... would have revealed that the allegation in the complaint that venue was proper in this district was neither 'well grounded in fact' nor 'warranted by existing law,' as Rule 11 requires." *Id.* at 1319. The court made MCS and its counsel jointly and ·severally liable for the sanction because both had signed the verified complaint. *Id.* The court also ordered that if MCS were to refile its action in a proper venue and prevail, it should recover no fees relating to this action. *Id.*

MCS filed a Fed.R.Civ.P. 59(e) motion to vacate the dismissal order and to alter or amend the $1,000 judgment, advancing two arguments. It maintained that it had not originally been mistaken as to Greeley's location because the complaint itself had alleged that Greeley was located in Ellsworth, Wisconsin. (*See* R. 1, at ¶ 43.) MCS provided affidavits from its attorneys and its principals to establish that the subsequent error in its memorandum was inadvertent.[6] MCS also asserted that its position was warranted under a number of decisions that look to a defendant's contacts with a state in general, as opposed to· contacts with a particular judicial district, in determining where a defen-

---

4. Section 801.05(3) provides for personal jurisdiction in the following circumstance:

**Local act or omission.** In any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant.

5. That section provides for personal jurisdiction as follows:

**Local injury; foreign act.** In any action claiming injury to person or property within or without this state arising out of an act or omission outside this state by the defendant,

provided in addition that at the time of the injury, either:

(a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or

(b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.

6. Attached to the affidavits were several earlier drafts of MCS' responsive memorandum, none of which contained the factual error.

dant is amenable to personal jurisdiction and therefore where it "may be found" for purposes of section 1400(a).

The district court denied MCS' motion but in doing so shifted the basis for Rule 11 sanctions. The district court conceded that due to "the absence of a contrary authoritative appellate decision construing § 1400(a) and the existence of ... authorities that at least colorably support the plaintiff's interpretation," MCS' position was warranted by existing law. *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 795 F.Supp. 277, 280 (E.D.Wis.1992). The district court nonetheless allowed the sanctions to stand, holding that "[i]rrespective of *its* interpretation of the law, the plaintiff was not entitled to miscast the facts in its response to the defendants' motion." *Id.* (district court's emphasis). The district court thus shifted the basis for sanctions from MCS' complaint to the factual error in its responsive memorandum.[7]

## II. ANALYSIS

### A. *Venue*

■ Because venue determinations are often fact specific, they generally are reviewed under the deferential abuse of discretion standard. *See, e.g., Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir.1990). This case does not involve the discretionary interpretation of disputed facts, however, but application of the copyright venue statute to undisputed jurisdictional facts. The issue is therefore one of statutory interpretation and is subject to de novo review. *See Hooker v. United States Dep't of Health and Human Servs.*, 858 F.2d 525, 528 n. 2 (9th Cir.1988); *Central Valley Typographical Union, No. 46 v. McClatchy Newspapers*, 762 F.2d 741, 745 (9th Cir. 1985).

The parties agree that venue is proper in the Eastern District only if Fjeld may be found there. They also agree that section 1400(a)'s "may be found" clause has been interpreted to mean that a defendant is amenable to personal jurisdiction in a particular forum. *See, e.g., Lipton v. Nature Co.*, 781

F.Supp. 1032, 1035 (S.D.N.Y.1992); *Store Decor Div. of Jas Int'l, Inc. v. Stylex Worldwide Indus., Ltd.*, 767 F.Supp. 181, 185 (N.D.Ill.1991); *Mihalek Corp. v. State of Michigan*, 595 F.Supp. 903, 907 (E.D.Mich. 1984), *aff'd*, 814 F.2d 290 (6th Cir.), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 502 (1987); *Battle Creek Equip. Co. v. Roberts Mfg. Co.*, 460 F.Supp. 18, 21–22 (W.D.Mich.1978); *Kogan v. Longstreet*, 374 F.Supp. 47, 50 (N.D.Ill.1974) (Bauer, J.). MCS and Fjeld disagree, however, about whether Fjeld's amenability to personal jurisdiction under the Wisconsin long-arm statute would entitle MCS to file its action in *any* judicial district in the state, or only in the district where the allegedly infringing acts occurred. Resolution of that question is central here because although Fjeld clearly would be subject to personal jurisdiction in the Western District—having allegedly committed a tortious "act or omission" there when it imported the infringing birdbath and delivered it to Greeley (*see* Wis.Stat. § 801.-05(3))—Fjeld just as clearly had no contacts with the Eastern District. Fjeld conducts no business there, and none of the acts or omissions that gave rise to this lawsuit occurred in the Eastern District.

■ On this issue of first impression in the federal appellate courts, we hold that section 1400(a) requires district courts to consider a defendant's contacts with a particular judicial district in determining where that defendant may be found. A defendant's amenability to personal jurisdiction must relate to the judicial district in which the action was filed to place venue there under section 1400(a). We thus agree with the district court that Fjeld may not be found in the Eastern District of Wisconsin.

Our analysis begins with the language of section 1400(a) itself. *See Milwaukee Gun Club v. Schulz*, 979 F.2d 1252, 1255 (7th Cir.1992) (" 'We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself.' ") (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051,

---

7. The district court also refused to vacate that part of its order forbidding MCS from recovering attorney's fees and costs relating to this action in any future suit. *Id.* at 281.

2056, 64 L.Ed.2d 766 (1980)); *Gorski v. Troy*, 929 F.2d 1183, 1187 n. 5 (7th Cir.1991). That section provides that a copyright infringement action may be filed *"in the district* in which the defendant or his agent ... may be found." (Emphasis added.) Thus, section 1400(a) itself requires that a defendant be found in a particular judicial district, rather than in the state in which the district court sits.

■ Yet, MCS argues that because the "may be found" clause has been equated with amenability to personal jurisdiction under a state long-arm statute, Fjeld "may be found" in any federal judicial district in the state. We disagree. Although we rely on the tools of personal jurisdiction—namely, state long-arm statutes—to determine where a defendant "may be found," we must do so in a way that is meaningful to the venue analysis, for section 1400(a) is concerned solely with venue and not personal jurisdiction. The section 1400(a) inquiry must therefore focus on contacts with the particular federal judicial district in which the copyright action has been filed.[8] It is not sufficient that Fjeld would be subject to personal jurisdiction under the Wisconsin long-arm statute by virtue of contacts with another district in that state.[9]

Professor Moore cogently states and resolves the problem we face here:

> The application of [Fed.R.Civ.P.] 4(f),[10] providing that the process of the district court can be served anywhere within the state in which the court sits presents other difficulties. The state long arm statutes or rules make a defendant subject to service of process in an action commenced in the state, and are based upon the existence of contacts with that state. Venue under § 1400(a), however, is geared to district. It appears, then, that such contacts as justify service under the state statute or rule must be contacts *with the district in which the action is brought,* and when personal service is had within the state, the defendant must be amenable to such service within the district in which the action is brought to meet the venue requirements of § 1400(a).

1A Pt. 2 Jeremy C. Moore *et al., Moore's Federal Practice* ¶ 0.344[8], at 4239–40 (2d ed. 1991) (emphasis added); *see also* 2 Howard B. Abrams, *The Law of Copyright* § 13.-05[C][1], at 13–22 to 13–23 (1991); 15 Charles

---

**8.** Our concurring colleague would look not only to state long-arm statutes in determining where a defendant may be found, but also to state venue rules. (*Post* at 452–453.) Judge Shadur's analysis would make venue under section 1400(a) completely dependent upon a state venue provision, for even if a defendant had no contacts with a particular judicial district, venue would be proper in that district if the defendant could be sued statewide under state law. We are not persuaded that venue under the federal copyright statute should turn to that extent on a state venue provision. If Congress had intended such undue emphasis on state venue rules, we believe it would have said so. Indeed, Congress would have had no reason even to refer to where a defendant "may be found," for the statute could simply have provided that suit may be brought in any district where the defendant could be sued under state law.

The concurring opinion also suggests that we are formulating a rule that is broader than necessary to resolve this case. (*Post* at 453, 455.) Not so. Our disagreement with the concurring opinion results from the difference in our approaches to the proper inquiry under section 1400(a). We have focused on amenability to personal jurisdiction, which we believe to be the *only* relevant consideration under the case law. As Judge Shadur points out, both Illinois and Wisconsin define amenability to process in statewide terms, meaning that the rule we announce today in this Wisconsin case would apply as well under the similar Illinois long-arm provision. Only by focusing on state venue rules in addition to long-arm statutes is it possible to suggest that we are deciding a case not before us.

**9.** As the district court explained, if a contact with one part of a state could place venue in a different part, the result would be problematic in large states such as Illinois and Wisconsin. *See* 795 F.Supp. at 279. Venue statutes are primarily concerned with the inconvenience to the defendant of litigating in a particular forum (*see Time, Inc. v. Manning,* 366 F.2d 690, 696 (5th Cir. 1966)), and MCS' proposed rule would aggravate rather than minimize any inconvenience.

**10.** [Footnote by this Court] Rule 4(f) permits service of process "anywhere within the territorial limits of the state in which the district court is held ...," meaning that it is not limited to the district in which the court sits. Here, MCS did not rely on Rule 4(f), but on Rule 4(e), which provides for service outside the state in accordance with "a statute or rule of court of the state in which the district court is held"—*i.e.,* the state long-arm statute.

A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3819, at 195 (2d ed. 1986); *Geo-Physical Maps, Inc. v. Toycraft Corp.*, 162 F.Supp. 141, 148 (S.D.N.Y.1958) (individual defendant subject to personal jurisdiction under Fed. R.Civ.P. 4(f) when served with process in the Eastern District of New York, but defendant may not be "found" in the Southern District because he had no contacts there); 2 Paul Goldstein, *Copyright: Principles, Law and Practice* § 13.3, at 407, 409–10 (1989).[11]

Our concurring colleague suggests that these primary and secondary authorities do not call for the rule we adopt today. (*Post* at 452–453.) Obviously, there is a paucity of case authority on the question presented here, and neither our footnote addressing *Lumiere* nor our citation to *Geo-Physical* suggests that those cases are directly on point, for they involved service of process on individuals rather than corporations. Those decisions thus provide only tangential support in an uncharted area. But even Judge Shadur concedes that *Moore's* supports our position, yet he then diminishes *Moore's* view as mere "professorial ipse dixit." (*Post* at 452.) That simply reinforces the absence of existing authority rather than indicating that *Moore's* view should be disregarded. Judge Shadur also acknowledges that Professor Abrams' treatise advocates our rule. (*Post* at 453.) Professor Abrams states that equating the "may be found" analysis to personal jurisdiction results in "too expansive a reading of the limits of where the defendant 'may be found.'" He thinks it

> more technically correct to say that because copyright infringement is a tort, the "may be found" standard validates venue *in any district where an infringing act has taken place* if the defendant would be subject to personal jurisdiction in a state court *for a tort committed in that district,* in addition to incorporating the "doing business" standard.

Abrams, § 13.05[C][1], at 13–22 to 13–23 (emphasis added). That is also the import of the rule we adopt today.[12]

▮ Having concluded that contacts with the Eastern District are required, it is clear that Fjeld may not be found there. Its "local

---

**11.** In *Lumiere v. Wilder, Inc.*, 261 U.S. 174, 176, 43 S.Ct. 312, 312, 67 L.Ed. 596 (1923), the Supreme Court considered an earlier version of the copyright venue statute that had established venue "in the district of which the defendant or his agent is an inhabitant, or in which he may be found." The question before the Court was whether the president of the defendant corporation, which was a resident of the Western District of New York, could validly be served with process as an agent of the corporation while he was in New York City (in the Southern District), although he was not there to conduct the business of the company and the company transacted no business there. The Supreme Court said not, explaining that "[i]f such facts are sufficient to give jurisdiction, a suit upon a copyright may be brought in any district of the United States in which one who is an officer or agent of a defendant is served with process; although neither plaintiff nor defendant has his residence or a place of business there, and although the copyright was not infringed there." *Id.* at 177, 43 S.Ct. at 313. The Court reserved the separate question of whether an agent "may be found" in a district where he was "transacting some business for defendant ... but was there only temporarily and had his residence and place of business elsewhere." *Id.* at 178, 43 S.Ct. at 313. Although *Lumiere* addressed only the question of where a corporate agent may be found under the earlier version of the copyright venue statute, the

decision lends some support to our view that the "may be found" analysis must be district, rather than state, specific.

**12.** After addressing each of our authorities, Judge Shadur returns, in his view, "to what the cases really say." (*Post* at 454.) Yet he proceeds to reference cases that only state the general rule, which we have acknowledged above, that section 1400(a)'s "may be found" clause traditionally has been equated with where a defendant is amenable to personal jurisdiction. (*See post* at 454, 455.) Those cases, and in particular the *Mihalek* decision on which Judge Shadur primarily relies, *did not* address the unique situation presented here—where a defendant has contacts with one federal judicial district within a state but absolutely no contacts with the district in which it has been sued. *See, e.g., Mihalek,* 595 F.Supp. at 907 ("the acts which constituted the alleged infringement of plaintiffs' copyrights occurred throughout the state, including this district"). Indeed, *Sollinger v. Nasco Int'l, Inc.,* 655 F.Supp. 1385, 1389 (D.Vt.1987), one of Judge Shadur's "legion of cases" (*see post* at 454), could not possibly be on point because the State of Vermont has only one judicial district, as does both Alaska and Oregon. (*See post* at 455 (citing *Munoz v. Albuquerque A.R.T. Co.,* 829 F.Supp. 309 (D.Alaska 1993); *Johannsen v. Brown,* 788 F.Supp. 465, 469 (D.Or.1992)).

act or omission" giving rise to MCS' alleged injury occurred in the Western District, when it imported and delivered the Canadian birdbath to Greeley's Ellsworth location. MCS does not allege that Fjeld committed any relevant act in the Eastern District.

■ MCS argues that venue is nonetheless proper because the copyright owner was injured in the Eastern District. According to MCS, the situs of an injury relating to a copyright or any intellectual property right is the owner's residence. But section 801.05(3) of the Wisconsin long-arm statute, upon which MCS primarily relies, focuses on the defendant's "act or omission," not on the location of the plaintiff's injury. *See Coté v. Wadel,* 796 F.2d 981, 984 (7th Cir.1986); *Lincoln v. Seawright,* 104 Wis.2d 4, 310 N.W.2d 596, 600 (1981); *Pavlic v. Woodrum,* 169 Wis.2d 585, 486 N.W.2d 533, 536 (Ct.App. 1992); *Dietrich v. Wisconsin Patients Compensation Fund,* 169 Wis.2d 471, 485 N.W.2d 614, 617–18 (Ct.App.1992).[13] The "act or omission" alleged here clearly occurred in Ellsworth, and MCS has directed us to no authority suggesting that the inquiry should be different in the copyright context.[14] Section 801.05(3) of the Wisconsin long-arm statute thus would not support a finding that Fjeld may be found in the Eastern District.

Although a separate section of the Wisconsin statute does emphasize the location of the plaintiff's injury, that section does not apply here. Section 801.05(4) addresses local injuries that result from foreign acts, but it also requires a showing either that the defendant offered or serviced its products within the state or that the defendant's products were used in the state "in the ordinary course of

trade." *See Stauffacher v. Bennett,* 969 F.2d 455, 458 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 814, 121 L.Ed.2d 686 (1992); *Lincoln,* 310 N.W.2d at 600; *Dietrich,* 485 N.W.2d at 618. MCS has not alleged any conduct by Fjeld in the Eastern District that would satisfy those requirements. Presumably, MCS did not even raise section 801.-05(4) for this reason.

Because Fjeld has no contacts with the Eastern District that would be sufficient to confer personal jurisdiction under the Wisconsin long-arm statute, it is not found there for purposes of section 1400(a). Thus, the district court properly dismissed this action without prejudice for improper venue.

*B. Rule 11 Sanctions*

■ We review the district court's decision to impose Rule 11 sanctions for an abuse of discretion. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990); *National Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731,* 990 F.2d 957, 963 (7th Cir.1993); *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 933 (7th Cir.1989) (en banc). A district court abuses its discretion in imposing Rule 11 sanctions when it bases its decision "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell,* 496 U.S. at 405, 110 S.Ct. at 2461.

The district court initially sanctioned MCS $1,000 because it found that the venue allegation in the complaint was neither well grounded in fact nor warranted by existing law. *Milwaukee Concrete Studios,* 782 F.Supp. at 1319.[15] After considering MCS'

---

**13.** *See also* Wis.Stat.Ann. § 801.05(3) Revision Notes—1959, at 59 ("it is the occurrence of the act in the state, not the injury, which furnishes the contact relied on for jurisdiction."). The Wisconsin Supreme Court has noted that it often utilizes the "revision notes" drafted by Professor G.W. Foster, Jr. to aid its interpretation of section 801.05. *Lincoln,* 310 N.W.2d at 599–600.

**14.** *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1141 (7th Cir.1975), on which MCS relies, is not on point. There, we considered a provision of the Illinois long-arm statute providing for personal jurisdiction over any person who commits a tortious act within the state. We explained that "under Illinois law, it is now well

settled that the term 'tortious act' inevitably includes the concept of injury, and for purposes of [the long-arm statute], the situs of the tort is the place where the injury occurs." *Id.* at 1142. Section 801.05(3), by contrast, focuses on the acts or omissions of the defendant, rather than on the location of the injury.

**15.** The district court declined Fjeld's invitation to award attorney's fees and costs pursuant to 17 U.S.C. § 505, which permits the court, in its discretion, to award costs and attorney's fees to the prevailing party in a copyright infringement case. The district court determined that Fjeld was not a "prevailing party" because MCS' complaint had been dismissed without prejudice,

motion to alter or amend the judgment, however, the district court shifted the basis for its award to the factual error in MCS' responsive memorandum. In its Rule 59(e) motion, MCS clarified its argument .that Greeley's precise location in Wisconsin was irrelevant because the "may be found" inquiry focuses on the forum state, rather than the particular district of suit. Although the district court again rejected this position (795 F.Supp. at 278–79), as we have on appeal, it noted the absence of authoritative appellate decisions addressing section 1400(a) and conceded that certain authorities "colorably support" MCS' interpretation of the statute. *Id.* at 280. The court nonetheless persisted in its imposition of sanctions because it found that the statements in MCS' responsive memorandum relating to Fjeld's contacts with Greeley in Milwaukee were not well grounded in fact. *Id.*

■ We agree with the district court that MCS' legal position was not sanctionable. As noted above, we are the first federal court of appeals to address this section 1400(a) question. Although district court decisions from this and other jurisdictions may have been at odds with MCS' venue position (*see, e.g., Sun Hill Indus. Inc. v. Holiday Trims, Inc.,* 20 U.S.P.Q.2d 1851, 1855, 1991 WL 307253 (E.D.N.Y.1991); *Mode Art Jewelers Co. v. Expansion Jewelry, Ltd.,* 409 F.Supp. 921, 923 (S.D.N.Y.1976); *Kogan,* 374 F.Supp. at 50–52), no appellate court had considered, much less rejected, that position. Indeed, we have previously reversed a sanctions award where we had not yet ruled on an issue, despite the fact that a district court within our circuit had squarely rejected the plaintiff's arguments. *See TMF Tool Co. v. Muller,* 913 F.2d 1185, 1191 (7th Cir.1990). We concluded that although the district court was free to follow the prior decision, it was not "objectively unreasonable as a matter of law" for plaintiff's counsel to take a different position because that position would not be "contrary to existing law in this circuit." *Id.* Although we disagree with MCS' interpretation of section 1400(a), its argument was not

contrary to existing circuit precedent and therefore was not sanctionable as a matter of law.

■ As for its revised basis for sanctions—the factual error in MCS' responsive memorandum—the district court presumably acknowledged that MCS had made a reasonable inquiry before filing its complaint (the complaint correctly alleged that Greeley was located in Ellsworth), but the court deemed the responsive memorandum frivolous "to the extent that it unnecessarily complicated the resolution of the defendants' motion to dismiss—and constrained the court to resolve the *real* legal issues without meaningful guidance from the plaintiff." *Milwaukee Concrete Studios,* 795 F.Supp. at 281 (district court's emphasis). The court also found that sanctions were "necessary and appropriate to deter such conduct in the future." *Id.*

Although MCS' factual error was admittedly a serious one, and one with which the district court was understandably perturbed, the error was inadvertent and therefore not sanctionable. Several facts support our conclusion. First, MCS seemingly knew that Greeley was located in Ellsworth, for it made such an allegation in its complaint. (R. 1, at ¶ 43.) Indeed, the affidavits of plaintiff's counsel affirmatively establish that MCS was aware that Greeley was located in Ellsworth and that Ellsworth was located in the Western District. (R. 17, at ¶ 8; R. 18, at ¶ 2; R. 20, at ¶ 2.) Fjeld concedes this very point in its brief. (Fjeld Br. at 3.) Thus, MCS' pre-filing inquiry was not inadequate, nor did it learn of crucial facts only after the complaint or other Rule 11 paper had been filed. *Cf., e.g., Triad Assoc., Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 596 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). Instead, MCS' responsive memorandum reflected incorrectly the results of an adequate pre-filing investigation. For reasons that MCS has not fully explained, the responsive memorandum placed Greeley in Milwaukee, although MCS and its attorneys knew that Greeley was located in Ellsworth. That may have been

meaning that it could be refiled in the appropriate judicial district. *Milwaukee Concrete Studios,* 782 F.Supp. at 1318. Fjeld has not challenged

that determination on appeal, and we express no opinion on it.

the result of attorney oversight, inattention, or negligence, but it was not due to an inadequate pre-filing inquiry into the facts.

Moreover, Greeley's precise location was not central to MCS' legal theory. Although the district court apparently believed otherwise, our review of the responsive memorandum suggests that MCS argued below, as it did here, that contacts anywhere within the State of Wisconsin are sufficient to establish venue under section 1400(a). MCS argued: (1) that Fjeld may be found in the Eastern District because it is "subject to jurisdiction in accordance with the Wisconsin Long–Arm Statute, Wis.Stat. § 801.05" (R. 9, at 1); (2) that personal jurisdiction existed under section 801.05(3) because "the predicate acts to the torts alleged in the Verified Complaint largely took place *in the State of Wisconsin* " (*id.* at 8 (emphasis added)); and (3) that its allegations of copyright infringement "state causes of action sounding in tort, with their locus in the Eastern District of Wisconsin" because infringement of an intellectual property right occurs "where the owner suffers the damage" (*id.* at 7; *see also id.* at 10). MCS has made the same arguments before this Court, fully realizing that Greeley is located in the Western District. Although MCS' error may have bolstered its contention that venue was proper in the Eastern District because a relevant "act or omission" would have occurred there, the erroneous fact was not central to the venue theory advanced in its memorandum.[16]

Significantly, Fjeld was not confused by MCS' error because it argued in reply that plaintiff's reliance on the Wisconsin long-arm statute "is completely irrelevant" and that contacts with the particular judicial district, rather than the State of Wisconsin in general, were required for venue purposes. (R. 12, at 2–3.) Of course, before Fjeld had filed its reply, MCS had discovered and flagged the error for Fjeld and the district court. Thus, no one was laboring under a misapprehension as to Greeley's true location. *See Navarro–Ayala v. Hernandez–Colon,* 3 F.3d 464, 468 (1st Cir.1993). Despite the error,

then, Fjeld understood the nature of MCS' legal argument, and the district court did as well, as its opinion indicates:

> In support of its allegation of venue, [MCS] suggests that under 28 U.S.C. § 1400(a) a party "may be found" wherever it is "amenable to personal jurisdiction," citing *AED Research & Services Corp. v. International Equipment Exchange Ltd.,* 223 U.S.P.Q. 457 (N.D.Ill.1983). It then asserts that the defendants are "amenable to personal jurisdiction" in this forum under the Wisconsin "long-arm" statute, Wis. Stat. § 801.05(3) (1990), by virtue of their contacts with Greeley Ornamental Concrete Products, a concern located in Ellsworth, Wisconsin. Under such an interpretation, venue is proper under 28 U.S.C. § 1400(a) because the defendants are amenable to personal jurisdiction *in Wisconsin.*

782 F.Supp. at 1316 (district court's emphasis). Even as framed by the district court, this argument does not depend on Greeley's precise location in the State of Wisconsin.

MCS thus made a colorable legal argument that was not undercut by its factual error. *Cf. Forrest Creek Assocs., Ltd. v. McLean Sav. and Loan Ass'n,* 831 F.2d 1238, 1245 (4th Cir.1987) (Rule 11 "does not extend to isolated factual errors, committed in good faith, so long as the pleading as a whole remains 'well grounded in fact'."); *Greenberg v. Sala,* 822 F.2d 882, 887 (9th Cir.1987) ("We hold that a complaint based on reasonable inquiry should not be found to be factually frivolous unless some clear authority or a litigant's own clear admission erases the factual underpinning from some essential element of the litigant's pleading."). Although we do not condone such startling factual errors in papers filed in federal court (and we certainly can empathize with the frustration the error caused the district court), the factual error was not the result of an inadequate pre-filing inquiry but was an inadvertent misstatement that was corrected in a timely fashion and that did not undermine

---

**16.** In fact, MCS never specifically argued that a tort occurred in the Eastern District of Wisconsin

because that is where Greeley was located.

plaintiff's legal theory. MCS' responsive memorandum therefore did not violate Rule 11.[17]

▮▮▮▮ Sanctions also were not necessary to deter similar conduct in the future. *See Milwaukee Concrete Studios,* 795 F.Supp. at 281. Although it is true that deterrence is a "central goal" of Rule 11 (*see Cooter & Gell,* 496 U.S. at 393, 110 S.Ct. at 2454), that goal would not be furthered by the imposition of sanctions here. Inadvertent factual errors will occur—we hope not frequently, but litigants and attorneys will make mistakes. MCS and its counsel made a glaring one here, and they certainly should have discovered the error before the memorandum was filed, particularly because MCS is familiar with Greeley by virtue of their separate litigation in the Eastern District. Perhaps a sanction would cause MCS and its counsel to more carefully review future filings, but Rule 11 is not directed to isolated factual errors that do not undermine a party's legal theory. Instead, Rule 11 is meant to deter "baseless filings in district court." *Id. see also Navarro–Ayala,* 3 F.3d at 466. This was not such a filing.[18]

▮▮▮▮ Finally, MCS also contests the district court's determination that it should not recover attorney's fees and costs relating to this case if it refiles in the proper forum and ultimately prevails. Despite the intuitive appeal of the district court's order, the court had no authority to tie the hands of a district court that might consider the appropriateness of a fee award in a future case. We therefore vacate that portion of the district court's judgment.

## III. CONCLUSION

Because venue is improper in the Eastern District of Wisconsin under 28 U.S.C. § 1400(a), we affirm the district court's dismissal of MCS' complaint. However, we reverse the district court's award of Rule 11 sanctions and vacate that portion of its judgment relating to attorney's fees and costs in a future case.

AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART.

SHADUR, Senior District Judge, concurring in the result.

Determining where an individual "may be found" ordinarily poses no difficulties: That locution is normally understood in its literal sense of the individual's physical presence. Indeed, for a long time the one-to-one correlation between the concept of being "found" in a place and being physically present there marked the outer limit of a court's—and hence of an opposing litigant's—ability to

---

17. As our discussion makes clear, we also do not believe that the responsive memorandum was interposed for an improper purpose. *See* Fed. R.Civ.P. 11; *Mars Steel,* 880 F.2d at 931–32.

18. Had we been inclined to affirm the $1,000 sanction, we would have been required to remand because the district court's award does not comply with our decision in *TMF Tool Co., supra.* There, we explained that a district court's decision to award sanctions must "clearly specify who is to pay the monetary sanction, who is to receive the monetary sanction and the amount of the monetary sanction." 913 F.2d at 1188; *see also Burda v. M. Ecker Co.,* 954 F.2d 434, 439 (7th Cir.1992). The judgment order in this case provides that "Milwaukee Concrete Studios and its counsel, jointly and severally, shall pay to the defendants as a sanction under Rule 11, Federal Rules of Civil Procedure, the sum of $1000." (R. 14.) This order does not satisfy our directive in *TMF* because it does not specify which of plaintiff's counsel is being sanctioned. A sanction may be imposed only against the attorney who

signed the responsive memorandum. *See Pavelic & Leflore v. Marvel Entertainment Group,* 493 U.S. 120, 124–27, 110 S.Ct. 456, 458–60, 107 L.Ed.2d 438 (1989) (Rule 11 sanctions are appropriate only against the signer of the sanctionable pleading or other paper, rather than against that attorney's law firm). A simple reference to MCS' "counsel" in the judgment order "is insufficient to constitute an imposition of sanctions against the persons who signed the pleadings or papers," for "[u]nless an attorney who signed the offending court documents is specifically identified for the imposition of sanctions, there can be no resulting judgment against him or her." *TMF,* 913 F.2d at 1189; *see also Burda,* 954 F.2d at 439–40. The practical effect of the district court's error is that only MCS and not its counsel were sanctioned, although that clearly was not the district court's intent. We again emphasize the importance of designating in the judgment order the specific attorney or attorneys against whom sanctions are being imposed—that being the attorney or attorneys who signed the offending document.

exercise power over an individual defendant (*Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877)). In those days it would have been unheard of to question the concept that tagging an individual with a summons within a jurisdiction was enough to subject that individual to judicial proceedings within the jurisdiction (the same issue that, because of intervening basic changes in the constitutional approach to defining a defendant's amenability to suit, splintered the Supreme Court a few years ago in *Burnham v. Superior Court of California,* 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990)).

But when we shift from the individual to an incorporeal entity—a corporation—the notion of where the defendant "may be found" shifts from the physical to the metaphysical. Corporations do present enough of a parallel to individuals to say, without fear of disagreement, that a corporation is certainly "found" where its plant and its principal offices are located. But once the jurisdictional ties are attenuated—as in determining what "contacts" the corporation has with the forum ("contacts" is itself a term that sounds physical, but that also requires personification when it is applied to a disembodied legal concept such as a corporation)—any attempt to define where the corporation "may be found" necessarily involves one or more legal fictions.

Of course most of the law as to this particular legal fiction (the question as to where a corporation is considered "found") has been generated in the course of deciding where the corporation is subject to suit. Little wonder, then, that the cases dealing with the problem that we are considering today—the meaning of the phrase "may be found" in 28 U.S.C. § 1400(a) ("Section 1400(a)"), a venue statute—have *uniformly* drawn on the amenability of the defendant to be sued in the forum under applicable state law. More on this subject a bit later.

Where I part company with the majority is in its abandonment of that universally-accepted principle—in its having stated in-

stead, as a universal rule, that a corporation "may be found" throughout a state so as to be suable anywhere within the state, yet that it somehow "may [not] be found" throughout that same state for venue purposes. As it happens, a narrower notion of where a corporation "may be found" does not pose a problem in Wisconsin, so that I have no difficulty in concurring in the result reached by the majority.[1] But this Court presides over cases that emanate from three states, and the majority opinion reaches out unnecessarily to announce what I submit would be the wrong result if this were an Illinois case.

Let us examine that last question by turning to the contrast between Wisconsin law and Illinois law as posed by the case at hand, for that contrast demonstrates the more limited scope of pronouncement that would resolve this case without creating problems in any cases that are not now before us. Illinois law (like that of most states) defines amenability to process in statewide terms (see 735 ILCS 5/2–209, the Illinois long-arm statute). But quite unlike Wisconsin, Illinois also expressly permits any foreign corporation over which jurisdiction is obtained via that long-arm statute to be sued in *any county* in the state. That result flows from the interaction of 735 ILCS 5/2–102(a), which defines such a corporation as a nonresident of Illinois, and *id.* 5/2–101, which says that an action against any Illinois nonresident "may be commenced in any county."

In Illinois, then, a foreign corporation that may be haled into court only via long-arm treatment (that is, under circumstances exemplified by those involving Fjeld Manufacturing here) is considered to be "found" in every one of Illinois' 102 counties. It does not matter that its only Illinois "contacts" may be with East St. Louis or Champaign—it may still be sued in Cook County, because the Illinois statutory fiction that defines where the incorporeal entities that we call corporations are "found" treats such a foreign corporation as being "found" *everywhere* in Illinois.[2] And if the corporation thus "may

---

1. As for the majority opinion's other two rulings—its disposition of the sanctions issue and its vacation of the district court's attorneys' fees and costs ruling—I concur in those results as well.

2. Amenability to suit in a location (in the venue sense) is, of course, a question quite separate from and antecedent to the question whether an application of the forum non conveniens doctrine

be found" in Cook County, it is really tautological to say that it also "may be found" in the Northern District of Illinois (of which Cook County is a part)—that is, to say that the Northern District is indeed "the district in which the defendant ... may be found" (the Section 1400(a) language), so as to lodge copyright venue in this district in the situation posited in this paragraph.

Do the authorities cited at pages 446 and 447 in the majority opinion call for a different result? Not at all. To deal with them in the order of citation there (and not their importance):

1. It is true that the editor of *Moore's Federal Practice* does say that "it appears" that the contacts for venue purposes must be with the particular district. But (a) such a professorial ipse dixit, advanced without any support, does not of course control the judicial function and (b) perhaps more important, nothing suggests that the editor has ever thought about (or even thought of) the point that is made here.

2. As for the Abrams text, the discussion there presents a more extended analysis of a set of related questions, and it does advocate the rule that the majority adopts. But like *Moore's* it does not at all address the kind of situation posed by Illinois law—and as with *Moore's* there is no hint that the author has considered (or even thought of) the very different (and distorted) application of the rule under such circumstances. In fact, a number of the cases that Abrams cites (a group of those referred to in his Section 13.05[C][1], at 13–22 n. 76) specifically state the "may be found" venue test in ways that would indeed cause an Illinois long-arm defendant to be considered "found" for venue purposes in *every* district court in this state, so long as its Illinois-oriented activities (whether in or out of the district where

(the state law vehicle) or a 28 U.S.C. § 1404(a) motion may thereafter determine that the action should be transferred elsewhere because of considerations of convenience. That distinction undercuts the significance of inconvenience as such as a compelling factor in construing Section 1400(a)—a factor that is adverted to at page 446 n. 9 of the majority opinion here. Judge Wisdom's opinion in *Time, Inc. v. Manning*, 366 F.2d

suit is later brought) have made it subject to personal jurisdiction anywhere in the State of Illinois.

3. As for the other procedural treatise cited by the majority, Wright & Miller does not state any such rule as *Moore's*—instead, it merely cites to the *Geo–Physical* case as an illustration.

4. In turn, *Geo–Physical* deals with the physical service of process (that is, the *Pennoyer v. Neff* type of service) on a nonresident *individual* within a district. In that situation the case says (understandably and quite correctly) that the district was the only one in that state in which the individual was "found." That of course is very different from the analysis that properly applies to a corporation that is metaphysically "found" in a state only through application of the long-arm statute, and that is physically served with process *outside* of that state.

5. Professor Goldstein's brief statement simply draws on the same few cases that are cited in the majority opinion and discussed here, so it adds nothing to the analysis beyond what is said in this opinion.

6. Finally, *Lumiere v. Mae Edna Wilder, Inc.* really comes within the selfsame category as *Geo–Physical:* It too deals with the very different issue of where an *individual* "may be found" based on physical service within the jurisdiction. It is worth observing that *Lumiere* stems from an era when amenability to process was limited to an individual's physical presence (again in the *Pennoyer v. Neff* mold), before all of the developments in the law that now allow defendants to be haled into court in jurisdictions where they have not actually been physically served with a summons. And *Lumiere* simply said in that context that the then-existing venue stat-

690, 696 (5th Cir.1966), cited by the majority opinion in that respect, makes the perceptive point (originally advanced by Judge Learned Hand) that *both* jurisdiction and venue test the elements of fairness and convenience to a defendant in a particular forum, occupying different points on the continuum along which those concepts apply.

ute, which permitted suit in a district where a corporation's *individual agent* "may be found," required that he or she be served in a district while engaged in corporate business (that is, while acting qua "agent") and not while he or she is a temporary visitor on his or her own private account.

To return to what the cases really say, let me scotch any notion that what is set forth here is just my own ipse dixit, to be set in opposition to that in *Moore's*. On the contrary, my independent research has led to some dozens of cases that justify the statement made in *Sollinger v. Nasco Int'l, Inc.*, 655 F.Supp. 1385, 1389 (D.Vt.1987):

> The cases are virtually legion which hold that for purposes of § 1400(a), a corporate is "found" in any district in which personal jurisdiction may be asserted over it.

Those many cases of course may employ slightly differing locutions, but they are all variants on the identical theme—for example, my former colleague Judge Nicholas Bua said in *Gallery House, Inc. v. Yi*, 587 F.Supp. 1036, 1039 (N.D.Ill.1984):

> Under 28 U.S.C. § 1400(a) the test for determining whether a nonresident defendant "may be found" within a district is the same as that for determining personal jurisdiction.

And in that respect Judge Bua then addressed the question in terms of whether "the defendant could reasonably anticipate being subject to suit in the forum *state*."

At least one case out of that host of authorities—all of which point in the identical direction—may be worth mentioning specifically, for it speaks to a concept of "may be found" that is wholly parallel to the one employed by Illinois law. In *Mihalek Corp. v. State of Michigan*, 595 F.Supp. 903 (E.D.Mich.1984) Senior District Judge Charles Joiner dealt with an action asserting copyright infringement claims (among others) not only against the State of Michigan but against its Governor and its Secretary of Commerce as well.[3] Judge Joiner—also hav-

ing conducted his own research—rejected the "preposterous" notion that the existence of a state-operated liquor store in Ann Arbor (that is, in Michigan's Eastern District) vested his court with venue there. But even though the individual defendants were physically present only within the Western District, he then went on to hold that because under state law those individuals were "amenable to personal jurisdiction throughout this state, including the area comprised by the Eastern District of this state" (*id.* at 907), they were also "found" within the Eastern District for Section 1400(a) purposes. That is precisely the line of analysis that calls for the identical conclusion under Illinois law.

Nor has the "legion" of cases stopped marching with *Sollinger*. Despite my general aversion to string citations (not the least of the reasons being the need to read all of the cases before citing them), in this instance it may be worth referring to what a quick U.S.C.A. and LEXIS search of post–*Sollinger* decisions in this area turns up: over a dozen decisions, including (to list only those that are reported in F.Supp. or that the LEXIS printout indicates are awaiting such reporting) *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F.Supp. 62, 66 (S.D.N.Y.1993); *Munoz v. Albuquerque A.R.T. Co.*, 829 F.Supp. 309, 312 (D.Alaska 1993); *Reliance Elevator Co. v. Miller*, No. 92 C 3703, 1993 WL 34718, at *4, 1993 U.S.Dist. LEXIS 1298, at *4 (N.D.Ill. Feb. 8, 1993); *Johannsen v. Brown*, 788 F.Supp. 465, 469 (D.Ore.1992); *Lipton v. Nature Co.*, 781 F.Supp. 1032, 1035 (S.D.N.Y. 1992); *Store Decor Div'n v. Stylex Worldwide Indus., Ltd.*, 767 F.Supp. 181, 185 (N.D.Ill.1991); *ISC–Bunker Ramo Corp. v. Altech, Inc.*, 765 F.Supp. 1310, 1329 (N.D.Ill. 1990); *Advideo, Inc. v. Kimel Broadcast Group, Inc.*, 727 F.Supp. 1337, 1341 (N.D.Cal.1989); *Microsoft Corp. v. Very Competitive Computer Prod., Inc.*, 671

---

3. After dispatching the bulk of plaintiff's claims on Eleventh Amendment grounds (*id.* at 905–06), Judge Joiner found that the copyright action seeking injunctive relief against the state officials survived. That then provided the framework for deciding the venue issue that corresponds to the one before us.

F.Supp. 1250, 1256 (N.D.Cal.1987). *Competitive Computer Prod., Inc.*, 671 F.Supp. 1250, 1256 (N.D.Cal.1987).

It is scarcely worth heaping Pelion on Ossa—*every* court that deals with the issue continues to speak in terms of equating where a defendant (most particularly a corporate defendant) "may be found" in Section 1400(a) to where that corporation may be *sued* (that is, where it is subject to personal jurisdiction). And once that is recognized, the very fact that under Illinois law a foreign corporation such as Fjeld Manufacturing would be considered as "found" in every county in Illinois necessarily carries with it the conclusion that the corporation would be deemed "found" in each of Illinois' three federal districts that embrace all those counties. And so a literal reading of Section 1400(a)—starting with "the language of the statute itself," as the majority urges at page 8—would lead to a totally different conclusion in Illinois from the one that the majority announces here as a universal rule.

Having said all this, let me deal briefly with the reason that the majority's handling of *this* case poses no such problem. Wisconsin (like most states, I believe) permits a foreign corporation over which jurisdiction is obtained under its long-arm statute to be sued *only* in a county where it "does substantial business" (Wis.Stat. § 801.50(2)(c), construed for the first time as to the "substantial business" test in *Enpro Assessment Corp. v. Plus, Inc.*, 171 Wis.2d 542, 492 N.W.2d 325 (Wis.Ct.App.1992)). Where a foreign corporation such as Fjeld Manufacturing does not "do[ ] substantial business" in any of the counties making up the Eastern District of Wisconsin, it is not then considered as being "found" in any of those counties. And that being true, it is perforce not "found" within the Eastern District. That is all that is necessary to affirm the result reached by the district court in this case, and I respectfully submit that the majority opinion ought to stop there.

This opinion might be prolonged by responding point by point to the majority opinion's references to what I have written here. But that would not add much to the dialogue, for it is unfortunately all too evident from reading those comments in the majority opinion that we are like ships that pass in the night. In my view the majority has suc-

cumbed to the tyranny of labels in stating its rule overbroadly, but of course I respect the fact that judicial perceptions may differ in that regard.

In sum, for the reasons stated here, I respectfully concur only in the result reached by the majority opinion.