GEMISYS CORPORATION, a California corporation, Plaintiff,

v.

PHOENIX AMERICAN, INC.; Phoenix Leasing, Inc.; Resource/Phoenix, Inc., Defendants.

And Related Counterclaim.

No. C 96–04017 CW.

United States District Court, N.D. California.

March 18, 1999.

Laurie S. Hane, Morrison & Foerster, Palo Alto, CA, for plaintiff.

Claude M. Stern, Joann Corti Covington, Fenwick & West LLP, Palo Alto, CA, for defendant.

ORDER DENYING DEFENDANTS' MOTION FOR SANCTION OF DISMISSAL AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WILKEN, District Judge.

Plaintiff Gemisys Corporation (Gemisys) asserts trade secret, copyright infringement, unfair competition, and breach of contract claims against Defendants Phoenix American, Inc., Phoenix Leasing, Inc., and Resource/Phoenix, Inc. (collectively, Phoenix) in connection with Phoenix's development of a competing investor services software program. Phoenix moves for the sanction of dismissal against Gemisys based on Gemisys' conduct in the course of this litigation. Phoenix also moves for summary judgment as to all of Gemisys' claims or, in the alternative, for summary adjudication as to specific aspects of Gemisys' trade secret and copyright claims. Finally, Phoenix moves for a protective order pending the completion of their discovery. Gemisys opposes Phoenix's motions and requests that the Court deny summary judgment pursuant to Rule 56(f) until Gemisys has an opportunity to conduct further discovery.

Having considered all of the papers filed by the parties and oral argument on the motion, the Court finds that any impropriety on Gemisys' part does not warrant the sanction of dismissal. The Court also finds that Gemisys fails to raise disputed issues of material fact as to whether it took reasonable efforts to protect its trade secrets, whether Phoenix copied PMIS, or whether the 1988 Agreement limited Phoenix's use of PMIS such that Phoenix's actions constitute a breach of that contract. The Court also finds that Gemisys has not satisfied the requirements of Rule 56(f) and declines to delay summary judgment to allow additional discovery by Gemisys. Accordingly, the Court grants summary judgment in favor of Phoenix on Gemisys' claims for trade secret misappropriation, copyright infringement, and breach of contract. Because Gemisys' claim for unfair competition arises from those allegations of wrongdoing, and Gemisys does not establish independent acts of unfair competition, the Court likewise grants summary judgment for Phoenix on Gemisys' unfair competition claim. Finally, the Court denies as moot Phoenix's motions for a protective order and for summary adjudication, and denies Phoenix's motion to strike evidence submitted by Gemisys.

## BACKGROUND

Both Gemisys and Phoenix provide investor services. Phoenix manages syndications and provides partnership investors with a range of services, such as processing new investments (known as subscriptions), making periodic distributions, and assisting with income tax reporting. To assist in providing such services, syndication managers like Phoenix often use specialized tracking and reporting software packages, known as investor services software. The parties dispute the development, licensing, and use of an investor services software program originated by Gemisys and its predecessors, called Partnership Management Information System (PMIS). Gemisys alleges that Phoenix misappropriated trade secret aspects of PMIS, infringed Gemisys' copyright in PMIS, and breached the license governing its use of the program by using PMIS to develop competing software and including trade secret aspects of PMIS in that program.

Gemisys' PMIS program is a comprehensive software package that reduces complicated administrative tasks into computer functions. The program processes subscriptions, tax forms, and checks; calculates distributions, commissions, and interest; and provides market reports and daily sales information.

The program now known as PMIS has its roots in software developed in the late 1970's by Robert C. Gathers, of Gathers & Associates (G & A). This software began as oil and gas management software which was developed as part of a project for, and in conjunction with, Energy Management Corporation (EMC). *See* Fowler Decl. ¶ 5. Beginning in 1980, there was a legal dispute between G & A and Mr. Gathers. Mr. Gathers subsequently left G & A and formed a new company, incorporated in Colorado, called Gathers Software (Gathers Software). Gathers Software and EMC continued to develop the software and in 1981 started marketing PMIS to other customers. In June, 1985, Gathers Software was sold to a holding company, which subsequently reincorporated the company in Delaware as Gathers Software, Inc. (GSI). In or about March, 1987 GSI changed its name to Gemisys. In February 1988, LCS, Inc., a California corporation, acquired all the assets of Gemisys and two

years later abandoned its own name in favor of Gemisys Corporation.

The core PMIS program, which is comprised of a basic file structure and source code, is substantively similar to earlier iterations of the program. Although PMIS has been enhanced in response to requests by users for additional functionality, the core software design and file structure has not changed since 1984. Hecker Depo. 77:16–78:18; Griffeth Decl. ¶ 3. PMIS still contains source code written in 1980 or earlier, and the logic and design of the program remains the same as the Gathers software. Hecker Depo. at 24:3–16.

In addition to using PMIS to serve partnerships for which it was the transfer agent, Gemisys and its predecessors also licensed the software to other corporations. Gemisys asserts that it has two types of clients: (1) "install" clients who have PMIS, in some cases including the source code, installed at their site, and (2) "time-share" clients who do not have PMIS on site but dial into the computer at Gemisys' facilities to run PMIS to generate reports. Although some of Gemisys' licenses closely resemble each other, and some of the clauses use standard language, Gemisys customized its licenses according to the individual agreements made with its licensees.

In 1987, Phoenix contracted with GSI to license PMIS and customize the program for Phoenix's use. Pursuant to the contract, Phoenix was allowed to install PMIS, including the source code, on a central processing unit located at Phoenix. In August, 1988, Phoenix and Gemisys entered a superseding agreement (1988 Agreement), which gave Phoenix a single corporate user license to PMIS and called for Gemisys to provide additional services to Phoenix. The 1988 Agreement included the following software license terms and conditions, among others:

7. SOFTWARE LICENSE TERMS AND CONDITIONS

7.1 Each Software product ... including any documentation related thereto such as, but not limited to, logic diagrams and manuals, flow charts and improvements or updates now or hereafter provided by GEMISYS (hereinafter collectively

called "Software"), is furnished to Customer under a personal, non-exclusive, non-transferrable license solely for Customer's own use only on the single Central Processor Unit (CPU) designated in the above [reference] ... or on which the Software is first installed. If Customer is unable to operate the Software on the CPU due to an equipment malfunction, the Software may be transferred temporarily to another single CPU during the period of equipment malfunction. The Software may only be copied, in whole or in part (with the proper inclusion of Gemisys' copyright notice and any other copyright or proprietary notice on such Software), as may be necessary and incidental to use on such single CPU, for archival and back-up purposes or to replace a worn or defective copy. The Software may not be reverse compiled, disassembled or otherwise reverse engineered.

\* \* \*

7.3  No title to or ownership of the Software or any of its parts is transferred to Customer. Title to all applicable rights in patents, copyrights and trade secrets in the Software shall remain in Gemisys and/or the third party vendor from whom Gemisys has acquired rights to license the Software. Software provided hereunder is proprietary, and Customer agrees to be bound by and observe the proprietary nature thereof. Except as may be permitted in writing by Gemisys, Customer shall not provide the Software or any part or copies thereof to any third party.

\* \* \*

13.  PROPRIETARY DATA. Certain data supplied by Gemisys such as diagrams, manuals, and schematics are confidential and proprietary to Gemisys and are furnished solely to assist Customer in the installation and operation of the Products. All such shall be so marked and customer agrees to abide by the terms of such markings.

In 1991, Phoenix, through its division Resource/Phoenix, began developing its own syndication tracking and reporting system, called S.T.A.R. In 1993, Phoenix began marketing S.T.A.R. to other partnership syndicators, in competition with Gemisys' PMIS program. In March, 1994, Phoenix Leasing terminated the 1988 Agreement with Gemisys. In or about 1996, Phoenix acquired three former Gemisys clients as customers. On November 5, 1996, Gemisys filed the complaint in this case.

Shortly after Gemisys filed its Complaint, Phoenix requested that Gemisys reveal the factual basis for its Complaint. At that time, and at a later Rule 26 meeting between the parties, Gemisys refused to provide this information, citing the attorney work-product privilege. Phoenix then filed a motion seeking a protective order staying discovery. In its opposition to Phoenix's motion, Gemisys cross-moved to compel Phoenix's compliance with the disclosure requirements of Rule 26.

In a March 20, 1997 order (March, 1997 order), Mag. Judge Hamilton granted Phoenix's request for a protective order staying discovery, and directed that Phoenix propound interrogatories no later than March 21, 1997, that Gemisys respond within thirty days of the date of service, and that Phoenix complete the depositions of all individuals identified in Gemisys' responses no later than May 23, 1997. The March, 1997 order specified that "[a]ll other initial disclosures and formal discovery shall be stayed until after the next case management conference." March 20, 1997 Order, at 8. Mag. Judge Hamilton also forestalled Gemisys' motion to compel Phoenix's disclosures under Rule 26, and denied Gemisys' motion to compel Phoenix's further responses to interrogatories.

In May, 1997, in response to Phoenix's first set of interrogatories, Gemisys identified a preliminary trade secret list. *See* Covington Decl. Vol. 3, Exh. 16 & Exh. A. Gemisys attached to this preliminary list, and marked as confidential, a flow chart depicting some of the major files in PMIS and their relationship to each other.[1]

---

1.  The chart, entitled "Gemisys Incorporated PMIS File Flow Chart," depicted the Broker/Dealer, Territory, Office, and Salesman files, and the relationship of those files to the Partner-

ship, Subscription, and State Codes files and the Participant, Duplicate Mail, Payee, and Legal Resident Address files.

In a July 2, 1997 discovery order (July 2, 1997 order), Mag. Judge Hamilton directed Gemisys to provide a complete list of its alleged trade secrets including "identify[ing] in writing with particularity and in detail each and every trade secret it contends is at issue in this lawsuit." On July 9, 1997, Gemisys served an amended interrogatory response with an expanded list of its trade secrets attached as Exhibits A–D. July 9, 1997 Interrogatory Response, Covington Decl. Vol. II, Exh. 14 & Exh. A–D.

In this list Gemisys claimed as trade secret three categories of materials. First, Gemisys claimed as protected PMIS' data structure design, including the know-how reflected in, and the design of, the files, records, and fields in PMIS, and the relationship among the files, records, and fields.

Second, Gemisys claimed as protected the design and implementation of PMIS' functional processes. These included how the software program managed data flow, how the functional processes interacted with other functional processes, and with the PMIS database, in a multi-user environment, and how each of the functional processes was set forth in the source code. Gemisys also claimed as protected PMIS' interactions with other PMIS programs (called "subordinate routines"), and with users, as embodied in PMIS screen images.

Third, Gemisys claimed as protected the parameters of PMIS, which Gemisys defined as user-supplied information that controlled the manner in which the PMIS program operated.

In April, 1998 Phoenix filed this motion for summary judgment asserting, among other things, that Gemisys disclosed and failed to protect its alleged trade secrets, lacks a valid copyright in the program, and has failed to provide any evidence that Phoenix misappropriated or copied PMIS or used the program in a manner not authorized under its license. On July 10, 1998 Mag. Judge Hamilton granted Gemisys leave to take limited discovery to respond to Phoenix's motion, including the opportunity to depose eight Phoenix witnesses.

## DISCUSSION

### I. Motion for Sanction of Dismissal

■■■ Phoenix moves for the sanction of dismissal under Rules 11 and 37 of the Federal Rules of Civil Procedure. Rule 37 provides that the Court may impose sanctions, including dismissal, for various reasons, including the failure by a party to make required disclosures or cooperate in discovery. Fed.R.Civ.Proc. 37. Dismissal is a severe sanction, which "is authorized only in 'extreme circumstances' and only when the violation is 'due to willfulness, bad faith, or fault of the party.'" *See In re Exxon Valdez,* 102 F.3d 429, 432 (9th Cir.1996) (citations omitted); *Henry v. Gill Industries, Inc.,* 983 F.2d 943, 946 (9th Cir.1993); *Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334, 1337 (9th Cir.1985). Although the court must consider the availability of lesser sanctions prior to dismissal, an explicit discussion of those alternatives is not required. *See Malone v. U.S. Postal Service,* 833 F.2d 128, 132 (9th Cir.1987) (finding that the district court had considered less drastic alternatives to dismissal because it had previously declared a mistrial and ordered the parties to produce certain information).

Rule 11 also permits a sanction of dismissal for a party's failure to conduct a reasonable inquiry into the facts and law prior to filing, or when a filing is frivolous, without factual foundation, or brought for an improper purpose. *See Business Guides, Inc. v. Chromatic Communications Enterprises,* 498 U.S. 533, 543, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991); *Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, 1177 (9th Cir.1996). Like Rule 37, "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *In re Keegan Management Co., Securities Litigation,* 78 F.3d 431, 437 (9th Cir.1996) (internal citations omitted).

■■■ Phoenix alleges that Gemisys has abused the litigation process by filing its complaint in bad faith and without reasonable inquiry, fabricating evidence, misrepresenting a key witness' declaration, misidentifying its trade secrets, failing to comply with voluntary disclosure deadlines, and failing to provide full disclosure. Although Gemisys

disputes Phoenix's allegations, and provides alternate explanations for its conduct, serious questions remain as to whether Gemisys was in fact proceeding in good faith.

The Court nevertheless finds that any misconduct by Gemisys does not rise to the level warranting a sanction of dismissal under Rules 11 or 37. In *Exxon Valdez,* for example, the court upheld dismissal because the plaintiffs had virtually refused to comply with discovery orders and a special master had determined sanctions would be ineffective. 102 F.3d at 432. In *Combs v. Rockwell,* 927 F.2d 486 (9th Cir.1991), counsel made thirty six changes to a party's deposition testimony, including materially altering his answers, after which the party signed the revised version under penalty of perjury, despite the fact that he had neither seen the original nor revised transcript. *Id.* at 488. Finally, in *Henry,* the court found that the plaintiff's failure to respond to interrogatories, refusal to produce documents, and refusal to submit to deposition for eight months had irreparably prejudiced the defendant because a key witness had become unable to assist with the defense. 983 F.2d at 947–48.

Neither does this case warrant the sanction of dismissal under Rule 11. As under Rule 37, cases in which dismissal has been granted under Rule 11 have involved egregious conduct. *See Combs,* 927 F.2d at 488 (falsifying material aspects of deposition testimony); *Sun World, Inc. v. Lizarazu Olivarria,* 144 F.R.D. 384, 389–90 (E.D.Cal. 1992) (submitting falsified documents to the court and committing perjury in furtherance of the initial fraud); *Munnings v. State of Nevada,* 173 F.R.D. 258, 260–61 (D.Nev.1996) (making false representation to the court regarding an attorney's willingness to represent a sanctioned party).

Accordingly, the Court denies Phoenix's motion for the sanction of dismissal.

## II. Summary Judgment

### A. Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1288–89 (9th Cir.1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg,* 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident and Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Trade Secret Misappropriation

■ The Colorado Uniform Trade Secrets Act (CUTSA)[2] provides that in order for information to be considered a trade secret the owner thereof must take measures to "prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." Colo.Rev.Stat.Ann. 7–74–102(4). The efforts required by a party to maintain secrecy are those reasonable under the circumstances, and do not require extreme or unduly expensive procedures. *Network Telecomm., Inc. v. Boor–Crepeau,* 790 P.2d 901, 902 (Colo.Ct.App.1990). Nonetheless, the law is clear that "[i]f an individual discloses his trade secrets to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses

---

**2.** The 1987 and 1988 licensing agreements contain a choice of law provision that indicates that the "rights and obligations of the parties" are governed by Colorado law. *See e.g.,* 1988 Agreement ¶ 20.4.

the secret, his property right [in the information] is extinguished." *City of Northglenn, Colorado v. Grynberg*, 846 P.2d 175 (Colo. 1993) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)).

The question of whether a party made reasonable efforts to maintain confidentiality is frequently one for the jury. *See Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 176–77 (7th Cir.1991) (jury question where plaintiff stamped drawings confidential, required employees and vendors to sign confidentiality agreements, kept documents in vault guarded by security officer, and retained original drawings). However, courts routinely summarily adjudicate cases in which the plaintiff did not take steps to ensure the confidentiality of its material. *See e.g. Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1557 (10th Cir. 1993) (affirming summary judgment in part because plaintiff publicly disclosed secrets); *VSL Corp. v. General Technologies, Inc.*, 44 U.S.P.Q.2d 1301 (N.D.Cal.1997) (no evidence of reasonable steps to maintain secrecy where plaintiff displayed its product at trade shows, distributed marketing information and did not require that a confidentiality agreement be signed prior to giving samples).

The failure by a party to mark its alleged trade secret as confidential or trade secret precludes in many cases trade secret protection for those materials. *See Jensen*, 998 F.2d at 1557 (plaintiff's design and project details for auto mall were not trade secrets in part because there was "no indication in the record that the documents supplied to the [defendant] regarding the [project] ... were labeled 'secret,' or that plaintiff took specific measures to keep the information confidential"); *Web Communications Group, Inc. v. Gateway 2000, Inc.*, 889 F.Supp. 316, 320 (N.D.Ill.1995) (granting summary judgment under the Illinois UTSA in part because plaintiff failed to protect the confidentiality of an advertising insert by stamping or designating it as confidential).

### 1. Elements

In its July, 1997 trade secret list Gemisys claimed as trade secret the data structure and design of PMIS, the programs' functional processes as set forth in the source code, PMIS' interactions with the users as embodied in screen images, and the parameters of the PMIS program. Phoenix asserts, and Gemisys does not dispute, that to the extent Gemisys disclosed any of PMIS' core elements, it disclosed all aspects of the program, because the elements of the program are equally protected or unprotected. *See* Schneider Depo. 364:12–25 (in Covington Decl., Vol. 3, Exh. 27); Hecker Depo. 387:13–21 (in Covington Decl., Vol. 1, Exh. 4).

### 2. Disclosure by Gemisys

■ Phoenix asserts that Gemisys disclosed to it the core elements of PMIS and freely provided detailed information about purportedly protected functions of PMIS without imposing a duty of confidentiality on it. Phoenix contends that Gemisys' alleged trade secrets were readily accessible to program users in the materials provided by Gemisys, but were not marked as secret. For example, all PMIS users had access to the user screens and data dictionaries, and thus to the files, fields within each file, and the parameters of the program, *see* Hecker Depo. 119:4–120:2, 123:9–125:6, 103:20–104:13; 197:23–198:1; 382:8–13; 384:8–19; 385:1–12, none of which Gemisys marked as confidential. Users also had access to information about the relationships between the files, and between the parameters and functions of PMIS. *Id.* Users likewise had easy access to PMIS' data structure from the database through PMIS' data dictionary.[3] Hecker Depo. 213:6–10, 123:21–124:2. Any client who wanted to run reports using the dictionary was able to do so, *id.* at 124, and Phoenix asserts that Gemisys showed it how to access the data dictionaries at its request, without advising it that the information contained in the dictionaries was confidential. Schneider Depo. 212:20–213:4; 216:3–7. According to Phoenix, Gemisys did not require it to keep the program confidential and did

---

**3.** The data dictionary defines where data is kept and illustrates the relationship between files and the fields within each file. Schneider Depo. 96:10–13.

not mark either the program or accompanying materials as trade secret or confidential. *See* Hecker Depo. 95:23–96:2 (indicating that she did not recall ever seeing Gathers' or Gemisys' documentation marked as trade secret); *id.* at 166:2–11 (indicating that none of the documentation she provided to Gemisys' clients regarding PMIS was marked as confidential or trade secret).

The manuals and other written materials Gemisys provided Phoenix also revealed detailed information about many of Gemisys' alleged trade secrets with no designation that those materials were confidential. For example, Gemisys' Investor Services User Tutorial (Tutorial Manual), which was copyrighted but which Phoenix claims was not marked as confidential or trade secret, included a flow chart depicting the core files of PMIS and the relationship between those files. Hecker Depo. 97:16–98:10; Schneider Depo. 175:5–176:8. PMIS documentation likewise contained information about the fields and parameters associated with the core files, but was neither marked, nor treated as, confidential or trade secret. For example, Phoenix contends that in the course of converting its system to the PMIS database, Gemisys provided Phoenix with technical information about the layout of PMIS files, fields within each file, and the parameters and attributes of those fields, without representing that those materials were confidential or trade secret. Declaration of Elaine Mayes, filed April 6, 1998 (Mayes Decl.) at ¶ 6, 7 & Exhs. 1–3.

Gemisys does not deny that it provided such information to Phoenix, nor does it claim that those materials were marked as confidential or trade secret. However, Gemisys argues that it did not waive its right to claim trade secret protection for those materials merely because it did not mark them as confidential. Gemisys first relies on its 1988 License Agreement with Phoenix. 1988 Agreement, ¶ 7.3, as evidence that it sought to protect PMIS.

If an integrated contract is unambiguous, it can be interpreted as a matter of law. *See Radiology Professional Corporation v. Trinidad Area Health Assn.*, 195 Colo. 253, 256, 577 P.2d 748 (1978). Gemisys contends that although the 1988 Agreement did not specifically require confidentiality, ¶ 7.3 prohibited

the disclosure of PMIS by Phoenix by specifying that title to the program remained in Gemisys and that Phoenix could not provide the software, nor copies or parts thereof, to third parties. However, while Paragraph 7.3 of the 1988 Agreement establishes Gemisys' proprietary interest in the "Software," defined in ¶ 7.1 as including documentation such as diagrams, manuals, and flow charts, it does not designate the program or other materials as confidential. Thus, these paragraphs demonstrate that PMIS is proprietary—that is, that PMIS is owned by Gemisys—but they do not by their terms require confidentiality, secrecy, or nondisclosure.

Although a duty of confidentiality can be either express or implied, *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974), Gemisys provides no evidence that it took any affirmative action to establish a confidential relationship with Phoenix, or to establish any other duty beyond the duty that Phoenix respect the proprietary nature of PMIS. *Cf. Phillips v. Frey*, 20 F.3d 623, 631 (5th Cir.1994) (potential purchasers informed that manufacturing specifications contained secrets); *Digital Dev. Corp. v. Int'l Memory Sys.*, 185 U.S.P.Q. 136, 141 (S.D.Cal.1973) (plaintiff sent defendant a letter stating that its design was confidential and parties were in a confidential relationship by virtue of negotiations for manufacturing rights).

Gemisys also argues that the fact that it included a marking provision in ¶ 13 of the 1988 Agreement is evidence that it sought to protect its intellectual property rights in PMIS materials. Paragraph 13, entitled "Proprietary Data," specifies that "certain data supplied by Gemisys, such as diagrams, manuals and schematics are confidential and proprietary and are furnished solely to assist Customer in the installation and operation of the Products. All such shall be so marked . . ." 1988 Agreement ¶ 13.

Thus, ¶ 13 specifies that certain data provided by Gemisys are not merely proprietary (that is, owned by Gemisys), and are also confidential (that is, secret), and that any materials that should be treated as confidential would be so marked. This is the only portion of the agreement that required Phoe-

nix to treat anything received from Gemisys as confidential.

Whether or not this provision applied to the computer software program itself, or only to related materials, Gemisys' failure to mark any materials as confidential under the marking provision precludes Gemisys from relying on that provision as evidence of its efforts to protect PMIS. Regardless of whether Gemisys was required by the agreement to mark the program or materials as confidential, its failure to mark any of the materials it provided to Phoenix, including the PMIS software, indicates that Gemisys did not regard those materials as confidential, much less trade secret.

Gemisys contends that although it did not mark PMIS materials as confidential, the terms of its license with Phoenix established a confidential relationship with Phoenix. *See* Hecker Depo. 100:10–101:5. Gemisys argues that Phoenix employees understood the material to be proprietary, John Depo. 70–71; Iverson Depo. 49, 53–54, and that Phoenix's standard procedure was to treat licensed software as proprietary to the licensor. The declarants' testimony reflects only that they believed the materials should be treated as proprietary, and not that Phoenix had a standard procedure. Furthermore, testimony as to whether Phoenix's employees believed that the materials were proprietary is not determinative as to whether those materials were confidential.

Addressing its unprotected disclosures to Phoenix, Gemisys relies on a number of cases which hold that individual failures to protect an alleged trade secret are not dispositive of a trade secret claim. *See e.g. Shamrock Tech. v. Medical Sterilization,* 808 F.Supp. 932, 937 (E.D.N.Y.1992) (showing screen images to potential customers did not extinguish right to trade secret); *Editions Play Bac S.A. v. Western Publishing Co., Inc.,* 31 U.S.P.Q.2d 1338, 1343 (S.D.N.Y.1993) (failure to enter non-disclosure agreement with actual or prospective customers not failure to take reasonable efforts to safeguard trade secret). Nevertheless, courts have considered multiple failures by a party to protect alleged trade secret, combined with the extensive disclosure of such information, as sufficient to extinguish a party's property right in the information. *See Jensen,* 998 F.2d at

1557 (no trade secret where allegedly secret design and information not marked as confidential and disclosed); *VSL Corp.,* 44 U.S.P.Q.2d at 1301 (no trade secret where plaintiff distributed without confidentiality agreements marketing information and made product samples available); *Stanley Aviation Corp.,* 196 U.S.P.Q. at 620 (no trade secret where helicopter safety system publicly disclosed without restriction and product was available in commercial marketplace).

In addition, Phoenix argues that Gemisys' disclosure of its materials to its other licensees without requiring confidentiality of them further belies its current trade secret claims. Gemisys responds that although it did not mark PMIS materials as confidential, the terms of its licenses with its other licensees established a confidential relationship with them, *see* Hecker Depo. 100:10–101:5, that required licensees to treat PMIS as confidential and prohibited them from disclosing information about PMIS.

Gemisys asserts that its licenses vary by contract and type of licensee (i.e., time-share or install), but insists that all of its licenses impose a duty of confidentiality on PMIS licensees. To support this assertion Gemisys provides two time-share licenses which specify that PMIS is proprietary, Covington Decl. Exhs. 18, 19 ¶ 5.2, limit access to the system by using passwords, *id.* ¶ 4.5, and direct that written manuals provided by Gemisys are for internal use only, may be copied only once, and must be returned or destroyed upon termination of the license. *Id.* ¶ 4.1.

Gemisys refers again to ¶ 7.3 of its 1988 Agreement with Phoenix as evidence that its licenses with install clients likewise imposed a duty of confidentiality. As discussed above, however, Gemisys' agreement with Phoenix did not contain a confidentiality requirement, except for ¶ 13, which Gemisys did not invoke. Gemisys also points to a 1983 agreement between the Gathers Company and Swift Energy Company which included a non-disclosure provision requiring that "all individuals having access to the software under this agreement" sign a non-disclosure agreement. Dedecker Decl., Exh. I, Doc. 9509. Nevertheless, as Phoenix notes, Gemisys does not provide any evidence of

licenses governing the use of PMIS prior to 1983, despite the fact that PMIS was first provided to EMC in 1979. In addition, Gemisys was inconsistent in designating PMIS as confidential in its post–1983 agreements.

The Court thus finds that evidence that Gemisys sought to protect PMIS materials in some of its licenses does not counter Gemisys' failure to provide protection for PMIS materials in other of its licenses.

Gemisys also contends that it sought to protect the program by restricting employees' access to PMIS through the use of various security measures and requiring that Gemisys employees sign confidentiality agreements.

First, Gemisys contends that both it and its predecessors controlled employees' access to the PMIS program, source code, and materials related to PMIS, Dedecker Decl. ¶ 11;[4] Fowler Decl. ¶ 4, by requiring the use of passwords to access the program, Dedecker Decl. ¶ 12, keeping the computers with the source code in secured rooms to which access was restricted, Hecker Depo. 88; Dedecker Decl. ¶ 11, and storing the manuals in locked cabinets. *Id.* Gemisys argues that it and its predecessors had a policy that all employees were required to sign confidentiality agreements pertaining to their employment, and provides documentary evidence of four such agreements: from 1984, 1989, and 1992. Dedecker Decl. ¶ 7–10 & Exh. E–H. Robert Gathers similarly asserts that programmers at Gathers & Associates and Gathers Software "usually had written agreements with the company ... requiring confidentiality." Gathers Decl. ¶ 13.[5]

Gemisys' attempt to restrict its own employees' access to PMIS is not enough to counter the fact that Gemisys disclosed its allegedly trade secret material to Phoenix and others of its licensees without imposing a duty of confidentiality upon them or their employees.

Gemisys argues that its efforts to protect its alleged trade secrets when it showed its program to potential customers establishes that it treated its trade secrets as such. Gemisys contends that it sought to protect the trade secret elements of PMIS documentation and presentations it provided to potential customers, such as depictions of user screens and disclosures about the program's structure. Gemisys asserts that presentations and documentation were given to prospective clients with the "understanding" that the material disclosed therein was confidential. *See* Griffeth Decl. ¶ 6; Second Griffeth Decl. ¶ 8. However, the only evidence that Gemisys took specific measures to protect the materials it disclosed to potential clients is Phillip McCarthy's testimony that the document entitled "Gemisys Investment Management Software System" was provided to prospective clients in final contract negotiations only after prospective clients signed a written confidentiality agreement or were advised orally that the document was confidential. Declaration of Phillip McCarthy, filed September 10, 1997 in connection with Gemisys' motion before Mag. Judge Hamilton to preserve confidentiality designations (McCarthy Decl.) ¶ 5.

In *National Presto Industries, Inc. v. Hamilton Beach, Inc.*, 18 U.S.P.Q.2d 1993, 2003 (N.D.Ill.1990), applying Illinois UTSA, the court granted summary judgment for Hamilton on the grounds that Presto's efforts to protect its product were "fairly lax" in light of its disclosures. The court found that although Presto had made some efforts to protect its product, such as showing it in closed booths at housewares shows, the fact that it had not required that customers sign confidentiality agreements, had given away units without restriction, and had commenced commercial sale of the product, eliminated its ability to claim trade secret protection for the product.

---

4.  Phoenix moves to strike this paragraph of Mr. Dedecker's declaration on the grounds that it lacks foundation. The Court finds that Mr. Dedecker's personal knowledge of the company during the time he was employed there is sufficient foundation to support his testimony.

5.  Richard Fowler also testified that he had entered a confidentiality agreement. Fowler Decl. ¶ 3. Nevertheless, George Griffeth, a former employee of a corporate predecessor of Gemisys, did not sign such an agreement, Griffeth Decl. ¶ 2, although he indicated that he understood his work was confidential. Second Griffeth Decl. ¶ 9.

Gemisys disclosed its alleged trade secrets to Phoenix without any indication that those materials were confidential or trade secret. Gemisys' attempts to protect PMIS from disclosure by some of its licensees and by its own employees, and its attempts to impose a duty of confidentiality on prospective customers with regard to a specific document, are undermined by its extensive disclosure of PMIS to Phoenix without any protection whatsoever. As in *National Presto*, Gemisys fails to raise triable issues of fact as to whether it can assert trade secret protection for PMIS and supporting materials in light of its lax treatment of these alleged trade secrets.

Gemisys' failure to impose any duty of confidentiality on those to whom it disclosed PMIS extinguishes its trade secret in those materials. The Court therefore grants summary judgment in favor of Phoenix on Gemisys' claim for trade secret misappropriation.

### C. Copyright Infringement

#### 1. Infringement Claim

■ To establish copyright infringement, Gemisys must establish ownership of a valid copyright and copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Gemisys may show copying by presenting direct evidence of infringement or by creating an inference of infringement by showing that Phoenix had access to PMIS and that S.T.A.R. is substantially similar to Gemisys' copyrighted work. *See North Coast Industries v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir.1992); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir.1992).

■ Gemisys does not present direct evidence of copying, and instead seeks to establish an inference of infringement. Phoenix clearly had access to PMIS: Phoenix was licensed to install PMIS, including the source code, on a central processing unit at Phoenix. Although a lower standard of proof is required on substantial similarity when a high degree of access is shown, *see Shaw v. Lindheim*, 919 F.2d 1353, 1359 (9th Cir.1990), access alone does not establish copying, and Gemisys must also satisfy its burden of pro-

viding some evidence of substantial similarity between PMIS and S.T.A.R. *See Aliotti v. Dakin & Co.*, 831 F.2d 898, 902 (9th Cir.1987) ("Evidence of access will not avoid the necessity of also proving substantial similarity since access without similarity cannot create an inference of copying.").

Gemisys argued at the hearing that copying should be inferred from the speed with which Phoenix produced S.T.A.R., the fact that S.T.A.R. competes with PMIS in the marketplace, and evidence that members of S.T.A.R.'s development team had access and exposure to PMIS during the time that S.T.A.R. was being developed. Absent evidence of substantial similarity, however, none of these factors is sufficient to raise a triable issue of fact as to whether Phoenix copied PMIS.

Gemisys asserts that under *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir.1989), and *Microsoft Corp. v. Very Competitive Computer Prods. Corp.*, 671 F.Supp. 1250 (C.D.Cal.1987), any use by Phoenix of PMIS that exceeded the scope of its license constitutes copyright infringement. First, as discussed below, Gemisys does not provide any evidence, aside from its own assertion, that Phoenix exceeded the scope of its license by using PMIS to develop S.T.A.R. Even if Phoenix exceeded the scope of its license, however, the cases that Gemisys cites do not establish that a copyright infringement plaintiff is relieved of its burden to show infringement of the underlying copyrighted work merely because the defendant's use exceeded the scope of a license. In *S.O.S., Inc. v. Payday, Inc.*, the Ninth Circuit reversed the lower court's finding that because the defendant had a license to use the plaintiff's software it could not infringe the plaintiff's copyright. 886 F.2d 1081, 1088–89 (9th Cir.1989). Although the Ninth Circuit concluded that the defendant had exceeded the scope of its license by copying the plaintiff's software, it remanded the case to the district court to determine whether this act, unshielded by a license, constituted infringement. *Id.* at 1089 & n. 11. Similarly, in *Microsoft Corp. v. Very Competitive Computer Prods. Corp.*, 671 F.Supp. 1250 (C.D.Cal.1987), the plaintiff had already made a prima facie case of in-

fringement, including showing that the defendants had manufactured, imported and distributed software that was substantially similar to its own copyrighted work. *Id.* at 1252, 1256.

In this case, Gemisys has shown that Phoenix had access to the program but does not provide evidence that S.T.A.R. is similar, much less substantially similar, to PMIS. Accordingly, even if Gemisys raised triable issues of fact as to whether it held a valid copyright in PMIS, it fails to raise an inference that Phoenix copied the program.

In sum, the Court finds that Gemisys has not presented any evidence that S.T.A.R. is substantially similar to PMIS and, thus, fails to raise disputed issues of material fact as to whether Phoenix copied Gemisys' program. Accordingly, the Court grants summary judgment in favor of Phoenix on Gemisys' copyright infringement claim. The Court therefore does not consider the validity of Gemisys' copyright in PMIS or its supporting materials.

### D. Breach of Contract

Gemisys asserts in its complaint that Phoenix breached its contract by using or disclosing confidential information. Complaint ¶ 47. Gemisys did not argue in its moving papers, nor at the hearing, that Phoenix breached the agreement by disclosing PMIS to a third party. Rather, Gemisys argues that Phoenix's breach is its use of PMIS to develop S.T.A.R., which Gemisys claims was not authorized by Phoenix's license. Specifically, Gemisys claims that Phoenix breached the 1988 license agreement when (1) Phoenix's Investor Services Group employees ran PMIS and referred to it to explain to S.T.A.R. programmers the functions it wanted S.T.A.R. to perform, (2) programmers working on S.T.A.R. viewed PMIS source code at a time when they may have been developing S.T.A.R., and (3) S.T.A.R. programmers reviewed the investor services manual. Gemisys argues that these activities breached the use limitation embodied in ¶ 7.1 of the 1988 Agreement, which Gemisys asserts did not include a right to use the program for development activities, and ¶ 7.3, which provided that the title to PMIS remained with Gemisys.

Paragraph 7.1 provided Phoenix with a "personal, nonexclusive, non-transferrable license solely for [Phoenix's] own use only on the [designated] single Central Processor Unit (CPU) ... on which the Software is first installed." 1988 Agreement ¶ 7.1. Gemisys argues that the permissible "use" to which ¶ 7.1 refers included only tracking, reporting, and processing data. Gemisys' only support for this assertion is the testimony of two Phoenix employees about what they understood the license to authorize. The deponents—Mr. Tong, Senior Vice President of Operations and Mr. Henerlau, the head of the S.T.A.R. team—indicated that they understood the license to authorize the tracking and reporting or processing of data for investors. Tong Decl. ¶ 3, Henerlau Depo. at 47–51. Neither deponent indicated that he believed Phoenix's use was restricted to those activities, and Mr. Tong indicated that he had not formed an opinion as to whether the license granted Phoenix the right to use PMIS for any other purposes. Tong Depo. at 47–48.

Gemisys does not present any evidence that the 1988 agreement defined the term "use," as included in ¶ 7.1, or that the scope of permissible use was otherwise negotiated outside of the Agreement. Contrary to Gemisys' argument, neither Mr. Tong's nor Mr. Henerlau's testimony about their understanding of the scope of permissible use of PMIS is evidence that Phoenix's use was in fact limited under ¶ 7.1 to tracking and reporting or data processing, as narrowly defined by Gemisys. In addition, testimony from Gemisys' own employees contradicts its assertion that Phoenix's use was thus limited. Gemisys employees indicated that it was their understanding that Phoenix had the right "to full access" to PMIS, Schneider Depo. at 105; "to use the system and understand it," *id.* at 103; to view and download its own data from the system even if in doing so it had access to Gemisys trade secrets, *id.* at 231, 235, 244, 298, 299; to create programs compatible with PMIS, Dedecker Depo. at 201:21–203:20; and to write code to customize PMIS and convert data from PMIS to S.T.A.R. *See* Schneider Depo. at 75–76, 105, 232–33.

Neither does Gemisys provide any evidence that Phoenix's actions otherwise breached ¶ 7.3 by usurping Gemisys' ownership of right and title to PMIS. The case on which Gemisys relies, *S.O.S., Inc. v. Payday, Inc.*, does not require that the Court find otherwise. 886 F.2d at 1081. In *S.O.S.*, a software licensor filed an action for copyright infringement and breach of contract, among other things, against its licensee. The defendant licensee argued that copying and modifying the software program were authorized uses under its license. The license as originally drafted did not anticipate that the defendant would possess a copy of the program itself, although the defendant later was given a copy. *Id.* at 1088 n. 9. The license provided that the software program was the property of the plaintiff licensor and that, although the defendant licensee acquired a "right of use," the plaintiff retained all rights of ownership. *Id.* at 1088.

With respect to the copyright infringement claim, the court found that the license was not intended to transfer the copyright owners' exclusive rights. *Id.* The court also found that the defendant had obtained the right to possess a copy of the software only to produce payroll data for its clients, and that the defendant had exceeded the scope of its license when it copied and prepared modified versions of the software without the plaintiff's permission. *Id.* at 1088–89. However, the court acknowledged that had the license been between the plaintiff and another software writer, the right of use could have included such uses as modification of the software. *Id.* at 1088, n. 8. The court did not reach the breach of contract claim because the contract did not provide for the type of damages sought by the plaintiff.

■ In this case, unlike in *S.O.S.*, Gemisys provided Phoenix with full access to the program as an install client, assisted Phoenix in understanding the structure and operation of PMIS, and allowed Phoenix to write code to the program. Phoenix was not in an analogous position to Payday, Inc., the defendant in *S.O.S.* because Payday, Inc. was licensed as a program user, and not a software writer.

In addition, Gemisys has not provided evidence of misuse comparable to that in *S.O.S.*[6]

Gemisys thus presents no evidence that Phoenix's use was limited under ¶ 7.1 to include only tracking and reporting or data processing. Absent a provision that so limited Phoenix's use, evidence that Phoenix employees accessed PMIS, viewed the source code, or reviewed the Investor Services Manual is insufficient to raise triable issues of fact as to whether Phoenix breached the licensing agreement. Neither does Gemisys raise triable issues of material fact as to whether Phoenix's conduct breached ¶ 7.3 of the Agreement by usurping Gemisys' proprietary rights in PMIS. The Court therefore grants summary judgment for Phoenix as to Gemisys' claim for breach of contract.

E.  Unfair Competition

■ Gemisys alleges that Phoenix engaged in unfair, unlawful, and fraudulent business practices, Complaint ¶ 33, under Cal.Bus. & Prof.Code § 17200. Section 17200 prohibits any unlawful, unfair, or fraudulent business act or practice. Virtually any federal, State, or local law can serve as the predicate for an action under § 17200 based on unlawful business practices. *See Podolsky v. First Healthcare Corp.*, 50 Cal. App.4th 632, 647, 58 Cal.Rptr.2d 89 (1996). A business practice is "unfair" for the purposes of § 17200 when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal.App.4th 1093, 1104, 53 Cal. Rptr.2d 229 (1996) (internal citation omitted).

Gemisys bases its claim under § 17200 on Phoenix's alleged misappropriation of Gemisys' trade secrets and breach of the licensing agreement. Gemisys also alleges misconduct by Phoenix in its use of Gemisys' trade secrets in the marketplace, such as Phoenix's alleged statements to Gemisys' customers that S.T.A.R. is an enhanced version of PMIS. *Id.* ¶ 20–21, 23–25, 32–37.

---

**6.** *CMAX/Cleveland, Inc. v. UCR, Inc.*, 804 F.Supp. 337 (M.D.Ga.1992) is similarly inapplicable to this case. In *CMAX* the defendant admitted that it had copied and then modified the plaintiff's file structures in programming its own system. 804 F.Supp. at 344.

As discussed above, the Court has found that Gemisys has failed to raise disputed issues of material fact as to its claims for trade secret misappropriation and breach of contract. Gemisys' allegations of unfair competition by Phoenix arise from those underlying claims. Gemisys does not assert that, absent trade secret misappropriation or breach of the licensing agreement, Phoenix's conduct was contrary to public policy, immoral, unethical, oppressive, or injurious so as to support a claim for unfair business practices independent of the underlying claim.[7] Without such allegations of wrongdoing, Gemisys cannot maintain its claim for unfair competition. The Court therefore grants summary judgment in favor of Phoenix on Gemisys' unfair competition claim.

## III. Further Discovery

### A. Rule 56(f) Motion

Gemisys contends that it has not been allowed to conduct adequate discovery, and requests that the Court deny or delay summary judgment under Rule 56(f) until it can take additional discovery to prove substantial similarity. Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for [summary] judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.Proc. 56(f). The court should continue a motion for summary judgment if the opposing party makes a good faith showing by affidavit that the continuance is necessary to obtain facts essential to oppose the motion. *State of California v. Campbell,* 138 F.3d 772, 779 (9th Cir.1998) (citing *McCormick v. Fund American Cos., Inc.,* 26 F.3d 869, 885 (9th Cir.1994)). Parties seeking a continuance must show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Campbell,* 138 F.3d at 779.

In a July 10, 1998 Order, Mag. Judge Hamilton allowed Gemisys to take limited discovery to respond to Phoenix's motion for summary judgment. Mag. Judge Hamilton granted Gemisys' request to depose eight Phoenix witnesses,[8] including Phoenix employees who were involved in the development of S.T.A.R., on subject areas set forth in Gemisys' request, including whether information from PMIS was used in designing, developing, or modifying the S.T.A.R. program. *See* Mag. Judge Hamilton, July 10 Order Re Plaintiff's Motion for Leave to Take Discovery (July 10 Discovery Order); *see also* Declaration of Laurie S. Hane, filed June 8, 1998, (June 8 Hane Declaration), ¶¶ 8(b)–(f), 9(b)–(d), 10(a)–(b). However, Mag. Judge Hamilton precluded Gemisys from asking questions "designed to elicit information about the structure of the S.T.A.R. program (including any information about the source code)." July 10 Discovery Order at 2. Mag. Judge Hamilton denied Gemisys' request to depose other unnamed Phoenix employees who had provided input to the S.T.A.R. development team or additional witnesses to rebut the testimony of Phoenix's declarants. Finally, Mag. Judge Hamilton denied Gemisys' request to obtain documents pertaining to the development, structure, and design of the S.T.A.R. program, except for Phoenix documents discussing or analyzing Gemisys' PMIS program.

Gemisys now requests that summary judgment be denied pending additional discovery, as follows. First, Gemisys seeks to depose for a second time Eric Henerlau, Richard John, and Susan Smith, to ask questions

---

**7.** Phoenix asserts in its motion for summary judgment that Colorado law applies to Gemisys' unfair competition claim because Colorado law governs the parties' rights and obligations under ¶ 20.4 of the licensing agreement. Because Gemisys cannot premise its cause of action under § 17200 on its trade secret misappropriation or breach of contract claims, any independent claim for unfair business practices would not require that the Court interpret the parties' licensing agreement. Therefore, in no case would Colorado law apply.

**8.** These individuals were Jeff Iverson, Elaine Mayes, Kim Silva, Bryant Tong, Eric Henerlau, Richard John, Susan Smith, and Kevin Fornes.

about the design, structure, and development of the S.T.A.R. program. Gemisys asserts that it believes these depositions would contradict Phoenix's assertions that it did not misappropriate Gemisys' trade secrets or infringe its copyrights. Gemisys also seeks to depose additional witnesses who were on, or provided input to, the S.T.A.R. development team, and additional members of Phoenix's Investor Services Group, who had access to PMIS and talked to members of the S.T.A.R. development team. Finally, Gemisys seeks to depose Pari Choksi, who has not yet been deposed but who Gemisys contends Phoenix has identified as the proper person to address the negotiation process and substantive provisions of the 1988 license agreement.

In addition, Gemisys seeks to obtain the documents regarding the S.T.A.R. program and its development that it sought in its motion before Mag. Judge Hamilton. Gemisys claims that these documents would allow it to rebut Phoenix's assertions that it had not engaged in wrongdoing in the development of S.T.A.R., and to refute any claim that PMIS and S.T.A.R. are not substantially similar or that Phoenix did not reverse engineer, decompile, or disassemble PMIS. *See* Declaration of Laurie S. Hane, filed September 4, 1998 (September 4 Hane Decl.), ¶ 12.

■ Gemisys' mere assertion that it believes it will discover through further discovery evidence to contradict Phoenix's witnesses does not satisfy the requirement under Rule 56(f) that Gemisys set forth the specific facts it seeks and attest that those facts exist. *See Campbell,* 138 F.3d at 779. First, Gemisys has already deposed Messrs. Henerlau, John, and Fornes, and Ms. Smith, who have already indicated that they did not copy, nor were they aware of copying of, PMIS, nor did they rely on PMIS to develop S.T.A.R. Thus, many of the issues on which Gemisys now seeks to obtain additional testimony have been the subject of previous inquiry.

Second, Gemisys has likewise already deposed several individuals on the issue of what Phoenix employees believed the 1988 license to authorize. Gemisys fails to explain how the additional discovery it seeks to obtain from Pari Choksi will support Gemisys' claim for breach of the use provision of the license

in light of Gemisys' extensive disclosure of its program.

Third, with respect specifically to Gemisys' claim for copyright infringement, Gemisys does not specify how additional testimony would establish infringement, except to provide more evidence that Phoenix had access to the program, which Gemisys has already shown. Neither does Gemisys explain how the disclosure of the S.T.A.R. design and development documents which Gemisys seeks would provide evidence essential to the motion for summary judgment, namely, proof of substantial similarity. Gemisys' mere speculation that these documents may reveal evidence to support its allegations is an insufficient basis on which to grant a Rule 56(f) motion.

A party may not use Rule 56(f) in the mere "hope that further evidence will develop prior to trial," nor as a vehicle for "shopping for a case." *See Continental Maritime v. Pacific Coast Metal Trades,* 817 F.2d 1391, 1395 (9th Cir.1987) (mere hope that evidence to contradict affidavits would transpire at deposition fails to satisfy burden of showing specific facts to support Rule 56(f) motion); *see also Neely v. St. Paul Fire and Marine Insurance Co.,* 584 F.2d 341, 344 (9th Cir.1978); *Contemporary Mission, Inc. v. U.S. Postal Service,* 648 F.2d 97, 107 (2nd Cir.1981) (plaintiff cannot defeat a motion for summary judgment by restating the allegations contained in the complaint and speculating as to what discovery may uncover). Gemisys has had sufficient time and access to establish its claims, or to discover evidence that would support granting it additional time to conduct further discovery. Gemisys neither explains why it believes the discovery it now requests would provide different information nor discusses what specific facts Gemisys anticipates it will obtain through additional discovery. The Court cannot grant Gemisys' Rule 56(f) motion based merely on Gemisys' speculation that it will discover facts that contradict the discovery that has been completed in this case and, thus, provide it with a foundation for this case. Accordingly, the Court denies Gemisys' motion under Rule 56(f).

CONCLUSION

For the foregoing reasons, Phoenix's motion for summary judgment (Docket No. 132) as to Gemisys' claims for trade secret misappropriation, copyright infringement, breach of contract, and unfair competition is GRANTED. The Court therefore denies as moot Phoenix's request for a protective order. In addition, the Court DENIES as moot Phoenix's motion to strike evidence (Docket No. 196) submitted in opposition to the memorandum for summary judgment. Finally, the Court DENIES Phoenix's motion for sanction of dismissal (Docket No. 138).